## LEIBROCK v. LEIBROCK.

Common Pleas Court, Butler County.

No. 67435.   Decided May 5, 1952.

Frank Schwab, of Connaughton & Schwab, Hamilton, for plaintiff.

John D. Andrews, Hamilton, for defendant.

## OPINION

By CRAMER, J.

This cause is before the court upon plaintiff's petition for divorce, the answer of the defendant thereto, the evidence, argument and briefs of counsel.

The defendant denies that either a ceremonial or common law marriage exists between her and the plaintiff. Admittedly no ceremonial marriage took place between these parties.

There is ample evidence before us as to cohabitation between plaintiff and defendant over a considerable period of time, probably from the year 1943 until June 1951, at which time they ceased cohabiting. The defendant vigorously disputes the existence of either a contract of marriage in praesenti or that they were treated and reputed as husband and wife in the community of Hamilton in which they resided all during the period in question.

We believe that the evidence fairly discloses that plaintiff, who for many years was a police officer in the City of Hamilton, and the defendant became intimate with each other in 1943. Both of these parties had previous marital experiences. The defendant has a son by a previous marriage who, at the time of the trial, was nineteen years of age.

For quite some period of time he resided and had a separate room in the house occupied by these parties. The premises wherein the plaintiff and defendant cohabited from the year 1945 until June 1951 (the date of separation) was located on South "G" Street. This property had been purchased and was taken in the name of Anna Johnson, the defendant herein. During all this period the defendant operated a restaurant known as the Palace Lunch Room which likewise was entirely in her name.

Plaintiff claims, and the evidence supports this contention, that he frequently worked at this restaurant. It was shown that the plaintiff made purchases of provisions for the restaurant, waited on customers and did other work about the place. The defendant contends that he frequented the restaurant for the purpose of obtaining his meals without charge, and that he did so obtain them. That he rendered no service in and about the place of any consequence, and has no interest whatever in and to this business.

It is clear from the evidence that these parties made several extensive automobile trips together. The defendant's son accompanied them on these trips, which were made in the years 1947, 1950 and 1951. On one of these trips the defendant's son had a companion with him. On all of these trips these parties occupied one room, either at tourist courts or at hotels wherein they stayed. The plaintiff testified that he registered these rooms which they occupied in the names of Mr. and Mrs. Arthur Leibrock, and that on several occasions the defendant stood by and acquiesced in such registration. The fact of such acquiescence is denied by the defendant, claiming that on each occasion she remained in the car until after the registration was completed. It appears, however, that she was familiar with the fact that the plaintiff signed the register as Mr. and Mrs. Arthur Leibrock.

The appellant admits that all during the period that she and plaintiff occupied the same living quarters, that on many occasions they slept together. The living arrangements likewise support the conclusion that these parties did cohabit as husband and wife.

We have no difficulty in finding, and we believe that the defendant will admit, that such cohabitation took place during and over the period indicated.

There is likewise considerable evidence that these parties were reputed as husband and wife in the City of Hamilton and among their acquaintances and friends, both social and business.

A considerable number of Christmas cards are in evidence

addressed to Mr. and Mrs. Arthur Leibrock, and were received by them from business acquaintances, friends, employees, associates, and from relatives of both parties. There is likewise evidence from which the conclusion could be drawn that one of the neighbors of these parties treated them as husband and wife. A visitor at the dwelling occupied by these parties on South "G" Street testified that one felt that she was walking into the home of a man and wife.

The defendant admitted that she was familiar with a story appearing in the Hamilton Journal which was to the effect that she had reported a fire which was nearby and wherein her name was given as Mrs. Arthur Leibrock.

The plaintiff claims that he, on many occasions, referred to the defendant and introduced her to others as his wife, and that she acquiesced in such introductions. Likewise, it is claimed by him that patrons and employees of the restaurant knew and referred to her as his wife. That persons having business dealings with the defendant in connection with the restaurant and elsewhere referred to the defendant as Mrs. Leibrock or Ann Leibrock. The plaintiff offered considerable evidence in support of this particular claim.

The defendant was equally vigorous in her denial that she was ever known either about her business establishments, her home, or anywhere in this community as the wife of the defendant, or as Mrs. Arthur or Ann Leibrock. It is her claim that she was referred to as Ann Johnson or simply as Ann. She likewise had considerable evidence—furnished in the main by some of her restaurant employees—supporting her contention in respect to this particular matter.

All the books in connection with her various business establishments and apartments were kept in the name of Ann Johnson. Her accountant testified that all such records, including tax, social security and other required returns were in the name of Ann Johnson.

It is undenied that the restaurant employees gave plaintiff and defendant a quilt as a Christmas gift and that this present was made to "Ann and Art." It is likewise admitted by the defendant that presents were given to the employees by her and plaintiff in the names of Ann and Art.

There is evidence, likewise undisputed, concerning a Christmas dinner given at the residence occupied by these parties. The dinner was in the nature of a family affair. One of the witnesses testified that on one occasion she went to the restaurant seeking a job and asked for Mrs. Leibrock. She further testified that the defendant, when asked by her if she was Mrs. Leibrock, stated that she was. This witness

also testified that the defendant told her that she had told one Harry Washburn (with whom plaintiff claims she was associating) that she was married. The testimony of this witness was vigorously denied by the defendant.

Other evidence is in the record which supports the plaintiff's claim that these parties bore the reputation in the community as being husband and wife.

We come now to consider what has been shown, if anything, in reference to an agreement to marry in praesenti made by these parties.

The evidence in respect to this particular matter may be summarized as follows:

The plaintiff testified that in 1943, at which time he and plaintiff were occupying the same apartment on South Third Street, the defenadnt said to him, "I will be your wife and you be my husband." At that time he gave the defendant two rings, one a diamond engagement ring, and the other a wedding ring. The gift of the rings, plaintiff asserts, was made after the conversation above related.

Plaintiff further testified as follows: "She did call me her hubby and I would call her my little wife." He also related that he and the defendant many times spoke about a marriage ceremony. That on one occasion, after they had moved to the "G" Street property, in discussing the question of a marriage ceremony, the defendant said to plaintiff, "There is no need to hurry, we are living here, we are man and wife now; we wouldn't be any more if we were married." The plaintiff also testified that the defendant wore both the rings which he gave to her, not only in the home, but also at the Palace Lunch Room and other places outside the residence. Except for admitting the receipt of the engagement ring (the defendant denies wearing the wedding ring), the defendant denied engaging in the foregoing conversation and making the statements attributed to her. In other words, the position of the defendant is that there never was any agreement, express or implied, to become husband and wife.

The foregoing is substantially the only evidence in the record in respect to a claimed express agreement.

We next examine the evidence to ascertain what, if any, proof there is of any facts and circumstances from which an agreement of marriage in praesenti may be reasonably inferred.

In the case of **Markley v. Hudson, 143 Oh St 163,** 54 N. E. 2d 304, 306, Judge Hart in the course of his opinion made the following statement:

"This court still adheres to the doctrine that it is essential

to show an agreement between the parties in praesenti to become husband and wife in order to establish a common-law marriage, but this does not mean that such proof must establish an express agreement resulting in contract, or that such result may not be established by circumstances from which an agreement in praesenti may be inferred."

Judge Hart also declared, as follows:

"While such agreement to marry in praesenti must be proved by clear and convincing evidence, it may be established by proof of the acts, declarations and conduct of the parties and by showing that the parties declared themselves to be husband and wife; that they transacted business with each other and with third persons as husband and wife; that they lived together and cohabited as husband and wife for a series of years; and that they were so treated and reputed in the community and circle in which they moved."

Here we have evidence that both parties declared themselves to be husband and wife. We refer to the testimony of plaintiff and witness Jessie Bowen.

The acts and conduct of the parties from which it might be claimed an agreement to marry could be reasonably inferred are as follows:

Plaintiff's gift to and the wearing of a ring or rings by the defendant, and the defendant's gifts to plaintiff. Acquiescence by the defendant in being introduced as plaintiff's wife. Various financial transactions between the parties and their frequent consultations in respect thereto, and other ventures. Plaintiff's participation with defendant in the purchase of the various properties and businesses acquired by her. Plaintiff was usually along when such transactions were completed and at least in one instance suggested to the defendant the advisability of purchasing one of the properties. The fact that plaintiff assisted in the operation of the restaurant and to some extent participated in its management. Plaintiff was given, by the defendant, access to the safety deposit box which stood in her name, "in case anything happened to her," as she said.

The defendant's living with the plaintiff over a long period of time, during a considerable portion of which her son resided with them. Likewise, defendant's son accompanying her and plaintiff on the several trips these parties took is of probative value. In other words, might it not be assumed that a mother would be unlikely to want her son, of discerning years, to be about her if her relationship with the plaintiff were merely a meretricious one? Significant also is it that on one of these trips a friend and companion of the son was permitted to accompany the parties.

Consideration should also be given to the social affairs—such as the Christmas dinner given by these parties—at the residence they occupied together, and which were attended by friends and relatives.

The defendant's acquiescence in plaintiff registering her as his wife at various tourist courts, hotels, and other places of lodging, is of probative value.

We also take into account the fact that the defendant testified that she did not go with the man with whom she is charged with associating by plaintiff, until after she and plaintiff became separated.

Plaintiff contends that the evidence which we have herein to some extent set out, establishes that a marriage relationship exists between these parties. He likewise contends that aggression and misconduct on the part of the defendant have been shown sufficiently to grant him a divorce from her.

There is, in our opinion, ample evidence, sufficiently corroborated, warranting the granting of a divorce to plaintiff in the event, of course, that the marriage relationship has been established.

It is the claim of the defendant that no common law marriage has been established by this evidence; that plaintiff therefore must fail in respect to this issue.

The elements essential to the establishment of a common law marriage have been well established by the various decisions of our Supreme Court. See **Umbenhower v. Labus, 85 Oh St 238, 97 N. E. 832; In re Estate of Redman, 135 Oh St 554, 21 N. E. 2d 659;** Markley v. Hudson, supra.

These cases declare that

"A mutual agreement of marriage in praesenti made by parties competent to contract, accompanied and followed by cohabitation as husband and wife, as a result of which the parties are treated and reputed as husband and wife in the community in which they reside, constitutes a common-law marriage."

It has likewise been asserted that the agreement to marry in praesenti must be proved by clear and convincing evidence.

In the disposition of this issue consideration should be given §8003-13 GC (formerly §11989 GC). That statute provides as follows:

"Proof of cohabitation, and reputation of the marriage of the parties, is competent evidence to prove such marriage, and within the discretion of the court, may be sufficient therefor."

The foregoing statute is found in the so called new Domestic Relations Act, under Chapter 3, entitled, "Divorce and Ali-

mony." This section of the Code has identically the same wording as former §11989 GC, which in turn was worded exactly as R. S. Sec. 5698. This statute has been on the books in substantially the same language for many years—since 1824.

The position of the plaintiff in respect to this statute is that it provides a way in which to establish common law marriage other than and in addition to that provided by the rule laid down in the **Umbenhower v. Labus case, 85 Oh St 238, 97 N. E. 832.** It is apparently his theory that the foregoing statute dispenses with the necessity of proving an agreement in praesenti, and the marriage may be established by proof of cohabitation and reputation only.

It is the claim of the defendant that §8003-13 GC supra provides a method by which a ceremonial marriage may be shown when the proof of the official record of such a marriage is lost or otherwise unavailable. In other words, it is his theory that this statutory provision permits proof of cohabitation and reputation of the parties to establish a marriage that was ceremoniously entered into. That it certainly is no authority—in view of the many decisions of the Supreme Court of Ohio requiring clear and convincing evidence of an agreement in praesenti—for permitting the establishment of a marriage without showing the contractual basis thereof.

The court is unable to agree with either of these contentions.

It is our view that this statutory provision lends support to the theory underlying the authorities which hold that cohabitation and reputation are evidential facts from which the existence of a contract of marriage may be inferred.

It is certainly not the law of this state that a common law marriage may be established without proof of an agreement to marry in praesenti. It is elementary that a marriage rests on contract. The Ohio authorities are unanimous in their holdings to the effect that an agreement to marry in praesenti is an essential element of a common law marriage and its absence precludes the establishment of such a relationship.

There is ample, respectable, authority holding that cohabitation and reputation are not essential to a common law marriage. This view is based upon the premise that marriage is a contract relation and hence that the fact of marriage may be established by proof of a contract only. This being true, cohabitation and reputation merely become evidential facts which permit the existence of the contract to be inferred. See 35 A. J. 199, Section 30; 55 C. J. S., Marriage. §22, p. 852; 33 A. L. R. 27.

In this connection the case of **Gatterdam v. Gatterdam, 86 Oh Ap 29, 85 N. E. 2d 526**, is highly enlightening.

It is our opinion that under §8003-13 GC, supra, marriage may be established in a divorce action, that is, a contract of marriage in praesenti ·within the court's discretion, by proof of cohabitation and reputation of the marriage of the parties. It is logical to hold that this statute permits, when the elements set out in the same are present, the court to find that the marital relation has been established, without respect to any other proof of agreement between the parties. This statute, of course, does not expressly require that a contract to marry in praesenti be established; it does, however, in our opinion, permit this essential element to be found from the proof of cohabition and reputation of the marriage of the parties.

See the Gatterdam case supra.

The view we take, we believe, is supported by the case of **Markley v. Hudson** supra, and also **26 O. Jur., 93; 35 A. J., 326, Sec. 220.**

It is interesting to note that as far back as 1832, in the case of **Houpt v. Houpt**, reported in **5 Ohio 539**, the court stated as follows:

"**Section 4** of the divorce act, **29 Ohio L. 432,** authorizes the court, in its discretion, to admit proof of cohabitation and reputation as evidence of the marriage of the parties. We understand the marriage referred to here, which in our discretion, may be proved by reputation, etc., to be the marriage of the parties to the suit, sought to be dissolved."

We are not in accord with the view expressed by counsel for the defendant ·to the effect that it is the law of Ohio that common law marriages are recognized by courts only to protect the rights of innocent persons, and rarely otherwise. Rather, it is our opinion that when all the elements essential to a common law marriage are present, the fact that an innocent person will not be benefitted or protected thereby, will not preclude its establishment.

To infer an agreement to marry from the evidence of cohabitation and reputation of the marriage of these parties is consistent with and in favor of morality and decency.

Irrespective of our construction of the effect of §8003-13 GC supra, we conclude that the evidence warrants a finding that an agreement to marry in praesenti was entered into between these parties. Perhaps the evidence is not clear and convincing respecting an express agreement between them. However, we do find that the plaintiff has established, by clear and convincing evidence, the requisite agreement, by im-

plication, from proof of the facts, declarations and conduct of the parties, and all the other facts and circumstances disclosed. In other words, it is our conclusion that plaintiff has shown an implied contract of marriage in praesenti.

Having found that a marriage has been established between these parties, we find, as indicated above, that the same should be dissolved by reason of defendant's gross neglect of duty. The plaintiff will, therefore, be granted a divorce from her.

Prior to the filing of this action plaintiff filed a suit against this defendant wherein he sought to establish a partnership between them respecting the businesses and real estate holdings in the name of defendant. It was stipulated between the parties in the cause now before us that the evidence submitted in that cause, which dealt at length with the properties and businesses of the defendant, should be considered by the court in a determination of the issues here insofar as same may be applicable.

Therefore, in the determination of the question of alimony, which is sought by the plaintiff, the court will also consider the evidence submitted in the partnership action.

The defendant owns the following property, real and personal, to all of which Ann Johnson has title:

A restaurant business known as the Palace Lunch Room. This business (defendant does not own the real estate in which it is located) was acquired after the sale by the defendant of a small lunch room which she had prior to cohabiting with the plaintiff. The "Palace" has been a highly profitable venture and it is claimed by the defendant to have provided the funds which made it possible for her to purchase the other properties.

A bakery known as Houston's Bakery. This business was purchased from the receiver for the sum of $12,000. Here too, only the chattel property is owned. Additional expensive equipment was purchased for the bakery and this business has likewise been a profitable enterprise.

The real estate, title to which is in Ann Johnson, is as follows:

A building located at 139 South "C" Street in the City of Hamilton, containing four apartments. This was purchased in 1944 for the sum of $5200. It produces a rental of approximately $190 per month furnished. The furniture and furnishings therein stand in the defendant's name, although a small part thereof was owned by plaintiff prior to the acquisition of this property.

A dwelling on South "G" Street (corner of "G" and Frank-

lin), Hamilton, Ohio. This property was acquired in 1945 and the purchase price was $9,500.

A building located at Front and Dayton Streets, Hamilton, which contains two apartments and six sleeping rooms. This was acquired in 1948 for a purchase price of $13,000. It too is furnished and produces a rental of approximately $420 per month.

A vacant lot which was purchased for the sum of $2000.

A blanket mortgage covers the real estate, and, as of January 23, 1952, $21,275.01 was due on said mortgage. The monthly payments on the same are approximately $275.

The plaintiff claims that he expended somewhere in the neighborhood of $1500 to $2000 over this period of time in making improvements and repairs upon the various pieces of real estate, and that he spent considerable time in looking after the properties, collecting rents, etc.: It is likewise his contention that the purchase of the real estate and the operation of the Palace Lunch Room and the Houston Bakery were made and undertaken at his suggestion and with his advice and counsel. He also claims to have made loans to the defendant to be used in connection with the purchases of properties or for their repair and improvement. It is also asserted that he put in many hours, much work and effort doing many and various jobs in connection with the operation of the lunch room. He therefore contends that whatever has been accumulated and acquired by the defendant resulted from his labor, management, and activities, along with that of the defendant; that their joint efforts created the estate she now has.

During practically the entire period in question plaintiff was a police officer in the City of Hamilton, working eight hours each day on various shifts. He therefore could devote only his off duty time in looking after these properties, and in performing work and service in and about the restaurant.

We are not too much impressed with the plaintiff's claim that his efforts, industry and judgment equalled the defendant's in the acquisition, accumulation and preservation of these various properties; nor does the evidence support him. It may be conceded, however, that he made some contributions in those respects which aided in producing those results.

It is manifest that the defendant is highly industrious, and competent. She possesses business acumen, and it is apparent that her efforts, coupled with her ability have been chiefly responsible for creating the estate she now possesses.

The statute, §8003-17 GC, provides that (when a divorce is granted):

"The court may allow such alimony as it deems reasonable to either party, having due regard to property which came to either by their marriage, the earning capacity of either and the value of real and personal estate of either at the time of the decree. Such alimony may be allowed in real or personal property, or both, or by decreeing either such sum of money in gross or by installments, as the court deems equitable."

It is to be noted that in the allowance of alimony the court is to give due regard to property which came to either of the parties by the marriage.

All the property which now stands in the name of the defendant, with the exception of the restaurant, was acquired by her after the parties entered into the marriage relation which we find exists in this case.

It does not necessarily follow, however, that this property came to the defendant "by their marriage." This would be true only as to that estate which plaintiff created or aided the defendant in producing, acquiring and retaining.

We believe that plaintiff should be awarded reasonable alimony in accordance with the permissive provisions of the statute.

The court therefore awards to plaintiff as alimony the real estate located at 139 South "C" Street, together with all the furniture and furnishings therein. The defendant will be ordered to convey the same to plaintiff free of and released from the blanket mortgage or any other lien against the same. She likewise will be ordered to execute and deliver a bill of sale for the furniture and furnishings to plaintiff. The decree is to provide that failure on the part of the defendant to make such conveyance and bill of sale to plaintiff within ten days following the entry thereof, will result in the decree operating as such.

The costs are to be taxed against the defendant.

An entry may be prepared in accordance with this opinion including a decree of divorce to plaintiff on the ground of gross neglect of duty.