McLAUGHLIN, DECEASED, ESTATE OF, IN RE.

Probate Court, Columbiana County.

No. 58858-A.   Decided August 30, 1963.

TOBIN, J. This matter came on to be heard on the petition asking for a declaratory judgment that Jeanette McGhee be declared to be the wife and surviving spouse of Harold L. McLaughlin, deceased. In opposition is Herbert McLaughlin, brother of the decedent and Hazel McPherson and Margaret Cusick, sisters of the decedent, Harold L. McLaughlin, and the answers of those parties denying the allegations in the petition. For convenience Jeanette McGhee who claims to be Jeanette McLaughlin will be designated as the Plaintiff and the others will be designated as the Defendants.

The Court will recite the evidence produced on behalf of both parties and designate the evidence in favor of the plaintiff and that which would favor the defendants.

The undisputed evidence discloses that the plaintiff and Harold McLaughlin began living together on or about July 1949 at 372 E. State St., Salem, Ohio, and did live together that entire period of time until the death of Harold McLaughlin on March 10, 1962.

PRO—Patrolman Norman Flick knew the decedent for over 10 years and the plaintiff for more than 20 years. He knew

the plaintiff as Jeanette McLaughlin, knew they lived together for over 10 years, and had called at their home. He knew the plaintiff had acted as a wife by paying the decedent's fine when he was arrested. He saw them together every night and in his opinion assumed they were husband and wife and that they conducted themselves as husband and wife. CON—He also had heard her called and knew her also as Jeanette McGhee.

PRO—Mayor Cranmer, a resident of Salem for 35 years, had seen the plaintiff and decedent together and knew they lived together and also saw them leading their dog. He had been in their home and knew they occupied the same room and bed for over 10 years. The plaintiff once paid the decedent's costs and he had heard her referred to as Jeanette McLaughlin. He heard the plaintiff call the decedent "Honey" and knew they had a reputation as being husband and wife. CON—He had heard the plaintiff called Jeanette McGhee by many people.

PRO—Wilford Smith, operator of the NB Bar, knew the decedent since 1957 and knew the plaintiff as Jeanette McLaughlin. CON—He never heard the plaintiff referred to by the decedent as Mrs. McLaughlin or wife.

PRO—Thomas Schaffer, bar tender at the NB Bar, knew the plaintiff as Jeanette McLaughlin for 10 to 15 years. He knew they lived together and had been in their apartment and in his opinion they were husband and wife. CON—He also knew her as Jeanette McGhee.

PRO—Olive Meyers knew the decedent first in 1944. She roomed with the plaintiff and decedent during July and August, 1950, and also three years after. She knew they shared the same bed and table and conducted themselves as husband and wife. She paid rent sometimes to the plaintiff and sometimes to the decedent. She heard him say to Jeanette "I am sure glad I am with you." CON—She never heard him refer to the plaintiff as his wife except several times at the NB Bar he would say "Here comes my wife I better get going." She called the plaintiff Mrs. McGhee but since 1953 she knew them as husband and wife.

PRO—LeVerne DeCrow had known the plaintiff and decedent for 12 years and knew the plaintiff as Jeanette McLaughlin and knew her relationship to be in her opinion husband

and wife because they lived together and came to the tavern together. In 1951 or 1952 the plaintiff introduced the decedent as her husband which was not denied by the decedent. CON— She also knew her as Jeanette McGhee.

PRO—Kathryn Mackres knew the decedent since 1949 and knew the plaintiff as Jeanette McLaughlin and thought they were man and wife. She visited them several times in 1949, 1950, and 1951, and saw them in other places. Her opinion was that they were husband and wife. She once heard the plaintiff called Mrs. McLaughlin by the decedent. CON—She knew her at the hospital however to be referred to as Jeanette McGhee.

PRO—Rex Reich, County Commissioners Clerk, for the past 10-11 years he knew her as the decedent's wife and was so considered by outsiders. They had the same address and in his opinion conducted themselves as husband and wife. He went there once for a birthday party with his own wife and was agent for his father who rented the apartment to the plaintiff. He heard the plaintiff call the decedent "Honey." CON—He never heard the decedent refer to the plaintiff as wife.

PRO—Russell Loudon, funeral director, knew the plaintiff as Jeanette McLaughlin. She made all the funeral arrangements and paid for same. CON—He also knew her as Jeanette McGhee.

The plaintiff's own testimony contains the following evidence:

PRO—In 1949 Harold McLaughlin came to live at 372 E. State St., Salem, Ohio, with the Plaintiff and shared her bed and board. That they agreed to live together as husband and wife before he moved in. That they were going to be married. That he gave her a ring right after he came to live with her which was to represent their marriage. That she represented herself to be his wife in the presence of many witnesses and called him her husband and the only reply he would make would be "That's about it" or something to that effect. CON—That she continued to be known at her place of employment as a Practical Nurse at the Central Clinic and Hospital as Jeanette McGhee for the reason that it was easier for her interests and social security to maintain the name of McGhee. That she borrowed money from the City Loan in the name of McGhee

with the explanation that the decedent could get no credit nor could she get any credit under the name of McLaughlin. That for business purposes she was known as McGhee but for social purposes as Mrs. McLaughlin.

PRO—That she received proceeds from the Metropolitan Life Insurance Company at the time of his death and made arrangements for his funeral and paid for the same. That the check from Metropolitan was made payable to Jeanette McLaughlin. That she received a check from the Veterans Administration as Jeanette McLaughlin. That she regarded herself at all times and at the time of his death as his wife.

CON—That she never visited nor had any visits from any of the defendants, the decedent's relatives, except once Herbert came and she told him to leave. That she always filed her income tax in the name of Jeanette McGhee and always voted under the name of Jeanette McGhee and her savings account at the Farmers' National Bank is in the name of Jeanette McGhee and her pay checks are so received in the name of Jeanette McGhee.

PRO—That the Metropolitan policy that she later received had been taken out by the decedent but she paid the premiums and she signed the application to receive the money and did so under the name of McLaughlin. That she received a check from the Railroad Union from a man named Mr. Toy under the name of Jeanette McLaughlin. That she felt she and Harold were married when they shared the same bed, home, and table.

CON—That she never incurred bills either under the name of McGhee or McLaughlin. The water and electric bills came in the name of McGhee.

PRO—In answer to the question why they did not get married by a minister or a person authorized to perform marriages she answered, "We fully intended to get married but as time went on we didn't think it was necessary, we felt we were married."

PRO—That she and Harold felt they were really married at the time they started living together and they did not feel that going to a minister would alter that feeling in any manner.

CON—That at the time the decedent died of carbon mon-

oxide poisoning because of being intoxicated in his car, that she gave the information to be put in the newspaper relative to his death but that she did not refer to herself in this account as his widow. Her reason being that she was ashamed of the manner in which he died. That she did notify one sister, Hazel, of his death. That she wanted Rev. Deitch to marry them and that they wanted a marriage ceremony performed.

CON—The defense witnesses consisted of Margaret Cusick who stated she never saw the plaintiff and decedent together. She was not close to her brother. The plaintiff never talked to her.

CON—Hazel McPherson also stated that the decedent came to her home every two to three months but never saw the plaintiff until the funeral. When she was called to be notified at the time of his death the plaintiff used the name of Jeanette McGhee and stated that Harold was dead.

CON—That Helen Mancuso, Leetonia, Ohio, stated that in 1951 and 1959 she dated the decedent and was warned by the plaintiff to leave him alone or there would be trouble. Herbert McLaughlin denied that Harold was a married man. Minnie McLaughlin, wife of Herbert, stated that she talked in 1955 to the plaintiff at the hospital and the plaintiff asked her to use her influence to get Harold to marry her.

PRO—That affidavits signed by Margaret Cusick and Hazel McPherson both indicated that they believed Jeanette McLaughlin to be the wife because they lived together as husband and wife since 1948. The explanation for Margaret Cusick and Hazel McPherson was that the paper was signed in the office of James D. Primm, Jr., Attorney for the Plaintiff. These were sent to the Railroad Retirement Board.

This action is to establish whether or not the plaintiff has established a common law marriage. The requirements for a common law marriage are:

1. Mutual agreement to marry in praesenti made by parties competent to marry.

2. Accompanied and followed by cohabitation as husband and wife.

3. A holding out of themselves as husband and wife in the community in which they move.

4. Being regarded as husband and wife in the community in which they move. (Ohio Jurisprudence (2d), 35, Sec. 22, Pg. 516.)

In *Umbenhower* v. *Labus* (85 Ohio St., 245), "the crux of this case is whether or not the plaintiff and decedent entered into a mutual agreement to marry in praesenti. A promise to marry in the future is invalid to establish a common law marriage."

*Duncan* v. *Duncan* (10 Ohio St., 181). Nor will a meretricious entrance into a state of cohabitation ripen into a common law marriage.

*Redman* v. *Ohio* (135 Ohio St., 554-558). Such common law marriage and all its elements contravenes public policy and is generally condemned and therefore all elements must be shown by clear and convincing evidence.

*Markley* v. *Hudson* (143 Ohio St., 169). A mutual agreement of marriage in praesenti made by parties competent to contract, accompanied and followed by cohabitation as husband and wife as a result of which the parties are treated and reputed as husband and wife in which they reside constitute a common law marriage.

While such agreement to marry in praesenti must be proven by clear and convincing evidence it may be established by proof of acts, declaration, and by showing that parties delared themselves to be husband and wife. That they lived and cohabited as husband and wife and that they were so treated and reputed in the community and circle in which they moved. In other words the surrounding circumstances and other evidence may lead to reasonable inferences that such a marriage was established by the parties in praesenti.

In *Cross* v. *Ledford* (161 Ohio St., 469). Clear and convincing evidence is defined by the Supreme Court of Ohio to be: "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases and shall produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."

Furthermore, in proving a common law marriage it is not essential that there be proof of their holding out as husband

and wife in the community as long as proof of their holding themselves out as husband and wife with persons who came in contact with them during the marriage is proved. *Gatterdam* v. *Gatterdam* (86 Ohio App., 34).

An interesting case in which considerable elements in dispute here parallel each other is *Leibrock* v. *Leibrock* (63 Ohio Law Abs., 568).

There is no dispute that the parties cohabitated with each other and lived under the same roof and shared the same bed and table from sometime in 1949 to the death of the decedent on March 10, 1962. There is considerable evidence and the Court finds that among their circle of friends with whom they associated at the NB Bar, the person who lived with the plaintiff and decedent, Olive Meyers, Mayor Cranmer, her collector of rent, Rex Reich, and Patrolman Flick all regarded them as husband and wife. In addition to this the two sisters of the decedent Hazel McPherson and Margaret Cusick in their statement to the Railroad Retirement Board also stated that because of cohabitation they believed them to be husband and wife. Therefore, they were so regarded by the circle of friends in which they lived.

The question comes as to whether or not there was an agreement to marry in praesenti, which is an essential element. Aside from the testimony of the plaintiff which states there was such an agreement when they entered into their cohabitation, there is evidence (1) of the ring presented by the decedent to her and (2), the fact that she referred to him as her husband to her friends and which he did not deny, (3) the fact she once locked him out and he came back rather forcibly and the fact (4) that she entered into funeral contract and did bury the defendant and paid for his funeral as a wife should do. Militating against this conclusion, unless satisfactorily explained, would be the fact that the plaintiff used the name of Jeanette McGhee in her work, for social security, voting, and also that when she gave the information of his death to the newspapers she did not state then that she was his wife and surviving widow. Her explanation, however, appeals ot this Court and particularly in view of the *Leibrock case*. She had worked for a long time under the name of McGhee and the difficulty of changing all

these records particularly in view of the fact that the marriage was not an ordinary one of ceremonial marriage, would be one reason for not changing her name on her records and voting. Her explanation of the drinking habits on the part of the decedent and the poor credit reference would be another reason why she would continue to use the name of McGhee in her transactions and also why she might be reluctant in the stress of his death to quote herself as his widow.

The Court took a long view to the fact that she did not give her name as his surviving spouse at the time she gave the facts to the newspaper of his death and family. But against this the Court balanced the following facts:

The reputation of the plaintiff was very good. From what evidence was introduced, her work habits as a practical nurse at the hospital for 20 years, that she was generally well regarded as a moral woman among those that knew her. Nothing was introduced in the way of evidence to indicate the plaintiff to be an immoral woman or one to enter easily into living or cohabitating with a man not her husband. The Court searched the records and found no evidence at all to prove this was not a fact. The Court found the plaintiff had a job as a practical nurse and has worked many years indicating she was highly regarded; she lived in the same place many years; paid all her bills and obligations and was generally regarded to be a person of good moral character.

Balancing this against all others the Court finds it hard to believe that a woman of this character would enter into meretricious relationship of fornication at her age in life, which then would be approximately 45 years of age.

The insistence of the plaintiff that they talked about going to a preacher to perform a ceremony bothered this Court some. The explanation, however, convinced this Court. The manner of entering into this marriage contract was not the regular way nor the way she entered into her first marriage. Therefore, a desire to have a marriage ceremony performed which could not be questioned would be a matter that might weigh on her mind but would not in itself militate against the establishment of a common law marriage.

63 Ohio Law Abs., 571, *Leibrock* v. *Leibrock*, is a parallel

case containing many of the things found in this case; the use of the maiden name, the matter of the ring, the holding out of themselves, etc.

Under all circumstances the Court finds that all the elements of a common law marriage was established by the evidence required by law and does hereby find Jeanette McGhee McLaughlin to be the surviving spouse of Harold McLaughlin, deceased. Exceptions to all parties. See Journal.