In re Estate of Soeder.

[Cite as In re Estate of Soeder, 4 Ohio Misc. 96.]

(No. 654429—Decided July 13, 1965.)

Exceptions to Inventory: Probate Court of Cuyahoga County.

*Messrs. Rippner, Schwartz & Carlin, Mr. Daniel R. McCarthy* and *Mr. Maxwell J. Gruber,* for exceptor.
*Mr. Vincent C. Fornes,* for executrix.

BARTUNEK, J.  On February 29, 1964, Edward A. Soeder, a resident of Cleveland, Ohio, died.  Shortly thereafter, an application for the probate of his last will and testament was filed and that will was admitted to probate on March 24, 1964.  On August 3, 1964, the inventory and appraisal of the estate of Edward A. Soeder, deceased, was filed.

Although provisions were made in the court-approved forms for the identification of a surviving spouse in the application for probate of the last will and the inventory and appraisal, neither document indicated that there was a surviving spouse.  The will itself, executed on July 23, 1963, although making bequests to the decedent's brothers, sisters, their spouses, and to nephews and nieces, made no mention of a surviving spouse.  The vast bulk of the estate was bequeathed to Theresia Soeder Towns and Isabella Soeder Ohlman, sisters of the deceased.

In September, 1964, a petition contesting the validity of the Soeder will was filed in Common Pleas Court by Catherine M. O'Connell, a. k. a. Catherine M. Soeder, who also filed, in the same month, exceptions to the inventory and appraisal in the Probate Court contending that she was the surviving spouse and sole heir-at-law of the deceased Edward A. Soeder.

Subsequently, on November 12, 1964, Catherine M. O'Connell, a. k. a. Catherine M. Soeder, hereinafter referred to as Catherine the exceptor, filed supplemental exceptions to the inventory and appraisal demanding her lawful rights as surviving spouse.  On February 2, 1965, she filed a motion for removal of executor and investigation of trust.

By agreement of counsel, all matters pending in Probate Court in respect to the estate were continued until a determination could be had as to the exceptions to the inventory and appraisal.  Accordingly, the exceptions were scheduled for hearing with the sole issue, therefore, before the court at this time being: Is Catherine the exceptor the surviving spouse of the deceased Edward A. Soeder?

Catherine the exceptor presented 13 witnesses and sought to introduce 75 exhibits into evidence, only 8 of which were received, to prove her case.  The estate presented 48 witnesses and sought to introduce 105 exhibits into evidence, most of which were accepted for its case.

Neither Catherine the exceptor nor the two sisters of Edward A. Soeder, Theresia Soeder Towns or Isabella Soeder Ohlman, testified, although all three were present in court at and throughout this trial.

The evidence fairly discloses that Catherine the exceptor was married in church at an early age and subsequently divorced. After her divorce, she kept company with Edward A. Soeder, for an extended period of time. This relationship seemed to be a very intimate one and friends testified that they thought Catherine and Edward were married. However, in May 1956, Catherine the exceptor filed a petition against Edward A. Soeder claiming damages for his breach of promise to marry her.

One month later, Edward A. Soeder and Catherine the exceptor dined at a restaurant together, at which time a release of all claims in respect to the lawsuit was signed by Catherine, and immediately thereafter Edward and Catherine went to the home of Margaret McCullough, Catherine's sister. There, in front of two witnesses, the couple exchanged marriage vows and told the witnesses that they wanted to make their marriage a "legal affair." After this, Edward and Catherine had coffee and left.

Throughout the following years until Edward's death in February 1964, this couple had a stormy, but continuing, relationship. They went to Florida together, sometimes with members of Edward's immediate family. They went out socially together frequently, sometimes occupying the same bedroom in the homes of relatives and friends. They worked together in various Soeder enterprises. The evidence shows that while out of town, sometimes they registered at motels as man and wife and sometimes they registered in their own individual names. Some of their friends and acquaintances thought that Edward and Catherine were married, some did not.

The record is clear, however, that at all times during her relationship with Edward, Catherine the exceptor continued to be employed, continued to live separate and apart from Edward, and continued to hold herself out in the community in which she lived as Catherine M. O'Connell, a divorced or single woman, and was so received by many who knew her well.

Edward A. Soeder did not hold himself out to be married.

The records of the hospital divulge his statement that he was single, as did his income tax records, will, and other documents. In fact, he made statements that he never was going to get married.

The question is, therefore, do these facts as disclosed by the evidence constitute a common-law marriage, thus entitling Catherine the exceptor to certain rights under the law as Edward A. Soeder's surviving spouse?

What, then, are the elements of a common-law marriage? In the answer to this question there abounds much confusion. All too often, it appears, facts have been tortured to allow a common-law marriage, particularly where the legitimation of innocent persons was concerned, and all too often facts have been twisted to disallow a common-law marriage where the apparent religious bias or the moral heritage of the court has been offended by those seeking to add the sanctification of the law to a relationship which had never been properly solemnized by a church or otherwise legally qualified official.

Even the text writers found this confusion as it is set forth in 35 Ohio Jurisprudence 2d, Marriage, Section 28, p. 522, as follows:

"Among the authorities generally there is a difference of opinion as to whether cohabitation and reputation, in addition to the agreement of the parties, are necessary to constitute a common-law marriage. Thus, some authorities follow the view that cohabitation and reputation are not essential on the theory that marriage is a contract relation which may be established by proof of a contract only, cohabitation and reputation being merely evidentiary facts from which the existence of the contract may be inferred. Others take the view that these elements are necessary on the theory that marriage is a status, founded upon mutual consent, which is not consummated until the parties by a holding out of themselves as husband and wife publicly assume such relation."

To this writer, however, there should not be such confusion. The law of the land must be a bright beacon proudly pointing the way for others to come. It cannot be a light that wildly vacillates one way at one time and another way the other time. The personal religious or moral feelings of a court cannot be allowed to conflict with the law of the land which must reflect

religious and moral feelings of the people, not the individual.

However sound the motivation, a fact situation cannot be twisted to establish a common-law marriage where there are children of that marriage, but to condemn a relationship as meretricious when there is no offspring of that union.

Perhaps some of the confusion has arisen in the requirement, which is found in all cases and readily accepted by all text writers, that the one essential element of all common-law marriages is that *verba praesenti* must be established as the first requisite of a common-law marriage. Too often these words are exchanged in secret, and with one or both parties unable to testify as to the words, courts have had to infer from relationships in the community, relationships with one another, reputations, and other significant events, that the words were exchanged, and that therefore there was a common-law marriage.

Ohio's own Section 3105.12, Revised Code, gives weight to the confusion when it states:

"Proof of cohabitation and reputation of the marriage of the parties is competent evidence to prove such marriage, and within the discretion of the court, may be sufficient therefor."

Thus, the need for proving the words of present assent seems to be abolished should the other conditions prevail. But this does not answer the question where these relationships do not appear.

We are indebted to Hugh A. Ross, Professor of Law at Western Reserve University, for his brilliant 1963 article entitled "Ohio Law of Marriage," 14 Western Res. L. Rev. 724, which clearly and succinctly sets forth the law of marital relationships in Ohio and in this nation, including the elements of a common-law marriage. On page 727, he writes:

"Marriage is *civil* in that no religious ceremony is necessary as a prerequisite to a legal marriage. The entry into marriage is a *contract*, although a special type. Like other contracts, it consists of an *agreement* between parties who have legal *eligibility* to marry. The contract is unlike other contracts in that there are special rules relative to formalities which do not apply to ordinary contracts."

One page 731, Ross states:

"The first essential of a common-law marriage is the capacity of the parties to contract marriage * * *

"The second essential element of common-law marriage is a contractual agreement to presently enter into the marital status. No particular form or wording is necessary. The contract need not be in writing, nor witnessed. The contract must be made *per verba de praesenti*, i.e., by words in the present tense * * *

"There is one area where the Ohio law on common-law marriage is still in doubt. Are the elements of capacity and agreement the only essentials of a valid common-law marriage, or is performance of the agreement also required? A few states have held that performance of the agreement, i.e., cohabitation as husband and wife, usually evidenced by reputation of the marriage in the community, is required before such a marriage becomes valid. *The great weight of authority is that cohabitation is not required* * * *" (Emphasis added.)

Two important cases in other jurisdictions cited by Ross setting forth the rule of common-law marriage are *Great Northern Ry. Co.* v. *Johnson*, 254 F. 683, and *Hulett* v. *Carey*, 66 Minn. 327. The *Great Northern Ry. Co.* case held:

"Where a man sent a woman residing in Missouri a written contract, signed by him, stating that the parties would henceforth be husband and wife and so conduct themselves, the law of Missouri, where the woman accepted the contractual offer, govern."

In discussing the case, the court said:

"* * * the rule seems to be that marriage is a civil contract, possessing in its creation *in praesenti* the elements, and only the elements attaching to any contract, but that because it establishes a legal status of grave concern to the state and society, and because of the natural temptations to perjury, and the difficulties of combating such testimony, both of which frequently arise, the courts will closely scrutinize testimony intended to establish such a contract after the death of one of the parties thereto * * *

"Mutual assent to the present institution of the (marriage) status is all sufficient. No other act, such as cohabitation * * * is necessary to complete the institution of the status where the mutual assent contemplates a marriage *in praesenti*."

Language in the *Hulett case* is equally strong, where the court held:

"It is mutual, present consent, lawfully expressed, which

makes marriage. All that is necessary to render competent parties husband and wife is that they agree in the present tense to be such, no time being contemplated to elapse before the assumption of the status. It is not necessary that such a contract be followed by holding themselves out to the public as husband and wife, or that it be acted on by their professedly living together in that relation. The distinction noted between the fact of marriage and the proof of it.''

Further, on page 336, the court said:

''* * * The maxim of the civil law was '*consensus non concubitus facit matrimonium.*' The whole law on the subject is that, to render competent parties husband and wife they must and need only agree in the present tense to be such, no time being contemplated to elapse before the assumption of the status. If cohabitation follows, it adds nothing in law, although it may be evidence of marriage. It is mutual, present consent, lawfully expressed, which makes the marriage.''

Let us now turn to Ohio law. In 1861, *Carmichael* v. *State*, 12 Ohio St. 553, held:

''* * * that it was to be inferred from the statement that the parties openly and mutually consented to a contract of present marriage—then to become husband and wife, and thereafter cahabited as such, and that this constituted a legal marriage, and the man having then a wife living, might, on proof of such second marriage, be properly convicted of bigamy.''

This was a case where a proper marriage ceremony was performed and the parties thereafter cohabited as husband and wife. Later it was found that the person who solemnized the marriage was not licensed to do so by the state. In upholding this marriage, the court cited *Dalrymple* v. *Dalyrmple*, 2 Hagg. C. R. 54, one of the earliest cases on common-law marriage, where Lord Stowell said:

''Marriage, in its origin, is a contract of natural law; it may exist between two individuals of different sexes, although no third person existed in the world, as happened in the case of the common ancestors of mankind. It is the parent, not the child of civil society. In civil society it becomes a civil contract, regulated and prescribed by law, and endowed with civil consequences.''

The *Carmichael case* introduced the first language on co-

habitation in Ohio, but it did not hold that cohabitation was a *required* element of a common-law marriage.

In 1910, in *Drach* v. *Drach*, 9 N. P. (N.S.) 353, the court held:

"A common-law marriage is a valid marriage in Ohio. A marriage contract, reduced to writing and signed and followed by cohabitation, reputation and publicity, constitutes an indisputable common-law marriage."

"The binding characteristic of such a marriage is not affected by proof that the wife had previously sustained a meretricious relation with another man."

In explaining its opinion, the court, on page 354, said:

"There are two ways in which a common-law marriage may be shown. One is specified in the statute on divorce and alimony in this state wherein it is enacted that proof of cohabitation and reputation may be given, and may be sufficient in the opinion of the court to establish marriage and justify subsequent divorce * * *

"The other mode of showing the existence of a common-law marriage is to prove the contract by direct evidence thereof, and when the contract is proven, clearly and decidedly, no evidence under the common-law is required as to subsequent cohabitation or reputation to establish such contract."

*Umbenhower* v. *Labus,* 85 Ohio St. 238, a 1912 case, held:

"An agreement of marriage *in praesenti* when made by parties competent to contract, accompanied and followed by cohabitation as husband and wife, they being so treated and reputed in the community and circle in which they move, establishes a valid marriage at common-law, and a child of such marriage is legitimate and may inherit from the father."

Here, the parties had instituted a meretricious relationship, but later decided to exchange words of marriage, did so, and continued to live together.

The court, on page 244, said:

"So it would seem that marriage rests on contract, and the state recognizes it as a civil contract, and it may be proved by competent parol proof and circumstances when the degree of proof is clear and satisfactory to the court or jury."

Often cited as a landmark decision, *In re Estate of Redman,* 135 Ohio St. 554, in 1939, held that a mere cohabitation of a man

and woman and a holding out as a married couple was not sufficient without *verba praesenti,* and refused to recognize such a relationship as marriage without the proving, by clear and convincing evidence, the *verba praesenti.*

*Markley* v. *Hudson,* 143 Ohio St. 163, in 1944 held:

"An agreement to marry *in praesenti,* made by parties competent to contract, accompanied and followed by cohabitation, as husband and wife, with the result that they are treated and reputed as husband and wife in the community in which they reside, constitutes a common-law marriage.

"While such agreement to marry *in praesenti* must be proved by clear and convincing evidence, it may be established by proof of the acts, declarations and conduct of the parties and their recognized status in the community in which they reside."

Here again, there was no actual proof of the contract of marriage, but rather there was an inference of such a contract from the cohabitation and reputation of the parties.

*Gatterdam* v. *Gatterdam,* 86 Ohio App. 29, a 1949 case, often cited as a landmark decision, held:

"In proving a common-law marriage, it is not essential that there be proof of a holding out of the parties to such marriage as husband and wife in the community in which they reside, as long as there is proof of a holding out with those persons with whom the parties came in contact at the time of the marriage contract and of their living together as husband and wife."

The court said, on page 31:

"An analysis of the adjudications on the subject of common-law marriage discloses some uncertainty whether, the contract being proven by words *de praesenti,* the marriage is established without further proof of cohabitation and holding out. It is said in *Herd* v. *Herd,* 194 Ala. 613, 69 So. 885, L. R. A. 1916B 1243, that:

" 'Mr. Chancellor Kent, in the fifth and subsequent editions of his Commentaries said: "If the contract be made *per verba de praesenti,* and remains without cohabitation, or if made per *verba de futuro,* and be followed by consummation, it amounts to a valid marriage, in the absence of all civil regulations to the contrary." '

"Thus, in the early consideration of the subject it was only when the parties contracted in words of future import that it

was a further requisite to prove the cohabitation and holding out to establish the marriage. This distinction has been carried through the later authorities. * * *"

In the *Gatterdam case,* the only holding out of marriage was for a period of 12 days at a tourist camp and there was no holding out of a marriage in the community in which the parties lived. And yet, the court found that the previously meretricious relationship was matured into a full and complete legal relationship of marriage by the circumstances presented herein.

In 1952, *Leibrock* v. *Leibrock,* 63 Ohio Law Abs. 565, held that marriage rests on contract, and the fact of common-law marriage may be established by proof of contract only, without proving cohabitation and reputation; and that when all the elements essential to common-law marriage are present, the fact that an innocent person will not be benefited or protected thereby will not preclude its establishment, since common-law marriages are not recognized merely to protect rights of innocent persons.

Another case where there was no holding out in the community as husband and wife, in fact, the wife used her "maiden" name on her job and deliberately omitted her name from the funeral notices, in 1963, *In re Estate of McLaughlin,* 93 Ohio Law Abs. 228, the court found that there was a common-law marriage.

From the above, therefore, it can be seen that all courts agree that there must be a contract of marriage between the parties with words of present tense. It can also be seen that this contract must be proved by direct evidence or it may be inferred from the acts of the parties. Reputation in the community, a holding out as a married couple, and cohabitation as husband and wife are all elements that are useful to prove the marriage contract when the proof of the *verba praesenti* is not present. But it does appear that these elements are not necessary to prove a marriage when the marriage contract of words of present tense has been clearly shown.

And it is clear that all authorities require the elements of a common-law marriage to be proven by clear and convincing evidence. *In re Estate of McLaughlin,* 93 Ohio Law Abs. 228; *In re Estate of Maynard,* 117 Ohio App. 315; *Cross* v. *Ledford,* 161 Ohio St. 469; and *In re Estate of Redman,* 135 Ohio St. 554.

Reviewing the evidence, we have in the instant case a man and a woman occupying a meretricious relationship for some 20 years. Suddenly, the woman sues the man for his breach of promise to marry her. The lawsuit is dismissed by action of the woman and within minutes of the signing of the release by the woman, the man and woman exchange vows of matrimonial intent in front of two witnesses and resume their relationship of appearing to a few, but not to all, as man and wife, still maintaining their separate residences, still identifying themselves on various jobs, voting and government forms as not married.

Does this then constitute a common-law marriage? We think that it does and it does because of the contract between the parties.

Were the *verba praesenti* part of a diabolical plot on behalf of the deceased to get rid of an embarrassing lawsuit or were they an act of true love wherein he wanted to take this woman as his wife? We do not know. But the evidence shows that there was such a contract. And this man, having enjoyed all of the fruits of the bounty of this woman during his lifetime, cannot now, in death, deny her a share of his earthly possessions.

The decisions have established that marriage must be founded upon a contract. The contract is here and established by clear and convincing evidence. That is all that is necessary to establish a marriage relationship. And further acts of the parties are not necessary to prove any marriage within these set of circumstances.

It is the decision of this court:

1. Cohabitation, the holding themselves out as husband and wife in the community in which they move, and a reputation as husband and wife in the community in which they live, by the deceased and the exceptor, were not established by clear and convincing evidence.

2. A mutual agreement to marry *in praesenti* made by parties competent to marry by and between the deceased and the exceptor was established by clear and convincing evidence.

3. A common-law marriage is established by the facts in this case.

4. The exceptions filed herein to the inventory and ap-

praisal are well taken and the file is hereby ordered to be corrected in accordance with this decision.

*Exceptions sustained.*