*165
 
 Hart, J.
 

 In the trial court, the following interrogatory, among others, was submitted to the jury: “Did William T. Markley and Eleanor Hudson Markley enter into a mutual contract of present marriage accompanied and followed by cohabitation as husband and wife, they being so treated and reputed in the community and circle in which they lived?”
 

 This interrogatory was answered in the affirmative. It follows, of course, that if there was probative evidence m the record to sustain this verdict of the jury, the Court of Appeals erred in reversing the judgment of the Probate Court and in rendering final judgment for the plaintiffs.
 

 The Court of Appeals, in its opinion, said:
 

 “The overwhelming weight of the evidence is that these two people lived together as husband and wife over a period of 13 years; that they lived the normal life of married persons; that Markley referred to the woman as his wife and she referred to him as her husband. Certain checks of Markley are in evidence made payable to her under the name of Mrs. William Markley and they were so endorsed by her. There is in evidence a quit claim deed for certain real estate executed by a number of parties, among them being listed — ‘Ella Markley and William T. Markley, her husband.’ They both joined in the execution of that deed. A member of the Coshocton county bar testified that on one occasion he was called by this woman for a consultation with reference to a proposed divorce; obviously the result of Markley’s conduct. He testified that after this interview with her, Markley interviewed him, the purport of this interview being to suggest he go slowly in the matter because of Mrs, Markley’s mental condition.
 

 “This evidence would have been sufficient to have established a common-law marriage under the law of Ohio as it wras at the time the members of this court
 
 *166
 
 and counsel in the case studied law. The then rule as understood by us all was set forth in the first branch of the syllabus in the case of
 
 Bruner
 
 v. Briggs, 39 Ohio St., page 478, which is — ‘In an action by one as surviving husband, against the heir of a deceased wife, to recover an estate by the curtesy where the marriage is put in issue, a marriage, in fact, may be established by showing that they lived together and cohabited as husband and wife for a series of years, that they always recognized and treated each other as such, and that they were so treated and reputed in the community and circle in which they moved, although no record evidence was offered, nor evidence of any witness who saw them married, was given. Such evidence is competent, and its sufficiency to establish the fact of marriage is for the court or jury trying the issue to determine.’ * * *
 

 “But we are now brought face to face with the decision of the Supreme Court rendered in 1939
 
 In re Estate of Redman,
 
 135 Ohio St., 554. In that case * * * the court said:
 

 “ ‘In this case, the evidence of the petitioner proved that the parties had cohabited and that they were recognized by those among whom they lived as man and. wife. However, in addition to this, it is essential to show an agreement
 
 in praesenti
 
 to become husband and wife, to establish a marriage at common law. No such agreement or intention of these parties was shown to exist when they assumed their relationship, as is required.’
 

 “This opinion of the Supreme Court was a
 
 per curiam
 
 opinion and as such expresses the opinion of the full court and is entitled to the same weight as the syllabus in an ordinary case. See 11 Ohio Jurisprudence, Section 148, page 799, and the authorities cited.
 

 “We can see no escape from the application of this doctrine, as applied to the facts in the instant case. It is with frankly admitted regret that we reach the con
 
 *167
 
 elusion that the judgment of the Probate Court in the instant case must be reversed.”
 

 In the judgment of this court, the Court of Appeals misinterpreted the pronouncement of this court in the
 
 Redman ease
 
 above cited, quoted from and relied upon by the Court of Appeals. This court still adheres to the doctrine that it is essential to show an agreement between the parties
 
 in praesenti
 
 to become husband and wife in order to establish a common-law marriage, but this does not mean that such proof must establish an express agreement resulting in contract, or that such result may not be established by circumstances from which an agreement
 
 in praesenti
 
 may be inferred. It is to be observed that in the
 
 Redman case
 
 one of the parties specifically disclaimed any intention to marry.
 

 Where the verdict and judgment of the trial court are' based upon conflicting inferences, reasonably deducible from the evidence, they are as conclusive upon a reviewing court as though based directly on conflicting evidence.
 
 Industrial Commission
 
 v. Pora, 100 Ohio St., 218, 221, 125 N. E., 662.
 

 Giving the evidence found in this record such interpretation as a reviewing court is required to do in view of the return of the verdict of the jury in favor of the defendants, this court concludes that there is proof which supports the specific finding of the jury that there was an agreement upon the part of William T. Markley and Eleanor Hudson to become husband and wife at the time they entered the Markley home and to live together in such relationship. This evidence, in addition to that recited in the opinion of the Court of Appeals as above quoted, may be summarized as follows:
 

 William T. Markley and Ella Markley, soon after their claimed marriage, attended at least one family get-together of the Markley family when they had a family dinner on Thanksgiving Day or Christmas. Ella
 
 *168
 
 Markley pointed out to a friend the Markley home as the place where she was to live when married to Markley. She also showed friends her wedding ring and a diamond ring which she said William Markley had given her. When this friend visited the Markleys overnight, they occupied the sleeping porch together while she occupied their bedroom. William T. Markley told neighbors that he and Ella were married and in speaking of her called her his wife.
 

 The sheriff of Coshocton county at the time the Markleys moved into the Markley home, resided across the street from William T. Markley and Ella Markley. He testified that about the time they came there to live he had a conversation with William'Markley as follows: “Bill, they tell me you are tied up”; he said, “yes, that is right, come out and see me.” The neighbor sheriff testified that Markley ‘ ‘ told me where they were married at, but I don’t remember.”
 

 The sheriff and the Markleys were at each others’ home frequently and Markley always referred to Mrs. Markley as his wife. The first time the sheriff ever heard their marriage questioned was
 
 ‘
 
 ‘ sometime after Bill died.” The competence of the following evidence in the record may be questionable but the sheriff testified, on cross-examination without objection, as follows :
 

 “Q. You never inquired about it [the marriage of the Markleys] # * *? A. Yes, sir, I know Bill Markley wouldn’t live with a woman unless he was married to her.
 

 “Q. You know that? A. Yes, sir, Bill Markley had his faults but he was a gentleman.
 

 “Q. They were married? A. Yes, sir.’”
 

 Soon after the Markleys moved into the Markley home they visited mutual friends, a husband and wife at Lancaster, who had formerly lived at Coshocton and had known the Markleys there. While at Lancaster the
 
 *169
 
 Hartleys and their friends went on a picnic and the Markleys stayed all night occupying the same room, announcing to the friends that they had been recently married.
 

 The record also discloses that William T. Markley was subject to periods of prostration due to a habit of inebriety. On these occasions Ella Markley went to great pains and performed much sacrificial service in taking care of him and nursing him. On the other hand, when Ella Markley became mentally ill, William T. Markley exhibited great concern and solicitude for her comfort and welfare, and did everything possible to restore her to health. The record also discloses that these people had gone along in life together as husband and wife for more than 13 years and that it was not until after the death of William T. Markley that any general gossip or rumors arose in the community as to the validity of their marriage. Unfortunately, neither of the parties concerned was able to testify, the voice of William T. Markley having been stilled in death and that of Mrs. Markley through mental incompeteney. Nevertheless the evidence of their marriage from other sources is strong and convincing.
 

 A mutual agreement of marriage
 
 in praesenti
 
 made by parties competent to contract, accompanied and followed by cohabitation as husband and wife, as a result of which the parties are treated and reputed as husband and wife in the community in which they reside, constitutes a common-law marriage.
 
 Umbenhower
 
 v.
 
 Labus,
 
 85 Ohio St., 238, 97 N. E., 832.
 

 While such agreement to marry
 
 in praesenti
 
 must be proved by clear and convincing evidence, it may be established by proof of the acts, declarations and conduct of . the parties and by showing that the parties declared themselves to be husband and wife; that they transacted business with each other and with third persons as husband and wife; that they
 
 *170
 
 lived together and cohabited as husband and wife for a series of years; and that they were so treated and reputed in the community and circle in which they moved. 26 Ohio Jurisprudence, 93, Section 88; 35 American Jurisprudence, 326, Section 220. The weight of this evidence is for the jury to determine.
 
 Bates
 
 v.
 
 State,
 
 9 C. C. (N. S.), 273, 19 C. D., 189, affirmed.
 
 State
 
 v.
 
 Bates,
 
 77 Ohio St., 622, 84 N. E., 1132.
 

 In the opinion of the court there is proper evidence in the record to support all the essential elements of a common-law marriage between William T. Markley and Ella Markley, and reaching that conclusion, the judgment of the Court of Appeals must be reversed and that of the Probate Court affirmed.
 

 Judgment reversed.
 

 Weygandt, C. J., Matthias, Zimmerman, P>ell, Williams and Turner, JJ., concur.