FITZGERALD, Appellant,

v.

MAYFIELD, Admr., et al., Appellees.

[Cite as *Fitzgerald v. Mayfield* (1990), 66 Ohio App.3d 298.]

Court of Appeals of Ohio,
Adams County.

No. 483.

Decided March 7, 1990.

*Jack D. Young* and *Elliott D. Bucher,* for appellant.

*Bruce S. Wallace,* for appellee Ross Fitzgerald.[1]

STEPHENSON, Judge.

This is an appeal from a judgment entered by the Adams County Court of Common Pleas pursuant to a directed verdict entered by the court at the conclusion of plaintiff's evidence in favor of James L. Mayfield, Administrator, the Industrial Commission and Ross Fitzgerald, defendants below and appellees herein, and against Mary Fitzgerald, plaintiff below and appellant herein, in an action filed by appellant pursuant to R.C. 4123.519 to recover benefits from the death of her claimed husband, Harold Fitzgerald.[2] The following errors are assigned:

"First Assignment of Error

"The court committed reversible error in sustaining defendant's motion for a directed verdict and overruling plaintiff-appellant's motion for a new trial.

"Second Assignment of Error

"The court committed an abuse of discretion in refusing to permit plaintiff to reopen her case to satisfy the judge's decision plaintiff had not established the criteria for 'to marry in praesenti.'"

The following facts pertinent to this appeal, most of which are undisputed, appear in the record. On July 4, 1978, appellant and the deceased, Harold Fitzgerald, were ceremonially married. At the time of marriage, each spouse had two children by prior marriages. Thereafter, the spouses and children resided in the same household. Subsequently, disagreements occurred be-

---

1. Kenneth B. Baylen, Ohio Assistant Attorney General, Cincinnati, Ohio, appeared and participated at trial on behalf of James L. Mayfield, Administrator of the Bureau of Workers' Compensation, and the Industrial Commission of Ohio, but did not file an appellee's brief in this appeal.

2. After directing the verdict, the court directed the jury to return a defendant's verdict. R.C. 2323.16, effective in 1965 and now repealed, provided, *inter alia,* that in civil actions, "[w]hen the court sustains a motion to direct a verdict, the court itself shall render judgment for the moving party as to the issue involved and cause such judgment to be entered upon the journal. It shall not be necessary for the court to submit such issue to the jury with the instructions to return a verdict for the moving party nor shall it be necessary for the jury to sign such verdict." Civ.R. 50(A)(5) provides that when a directed verdict is granted, jury assent is unnecessary and appears to have been intended to continue the statutory practice of not submitting the matter to the jury.

tween appellant and her stepson, Johnny Ray Fitzgerald, resulting in Johnny running away and refusing to attend school.

Because of such disagreement, Johnny demanded that the father get a divorce or he, Johnny, who was then approximately sixteen years old, would move out and never come back. As a consequence, appellant and her husband secured a dissolution of their marriage on October 24, 1984. Mr. Fitzgerald rented a mobile trailer approximately six miles away from the home of the parties and Johnny moved into the trailer.

Appellant and her husband never separated and returned together to their home the day of the dissolution and continued their same activities as during the formal marriage, including living as man and wife, occupying the same bedroom and having intimate relations, except that Mr. Fitzgerald would spend two or three nights a week with his teenage son in the trailer. Appellant continued to cook meals for her husband, he continued to bring home his paycheck, they visited relatives together, and went on social outings together. Appellant testified, and it was corroborated by other witnesses, that after the dissolution she introduced Mr. Fitzgerald as her husband and he introduced her as his wife. She testified, and this was corroborated by another witness, that she and her husband applied for a bank loan identifying themselves as husband and wife.

Testimony by Cheryl Hott, daughter of appellant, was to the effect that after the dissolution Mr. Fitzgerald introduced appellant as his wife and appellant introduced him as her husband. Johnny Fitzgerald testified, *inter alia,* that after the dissolution Mr. Fitzgerald continued to support appellant's children and continued to provide a home for Cheryl Hott, who resided with appellant from the 1978 marriage until Mr. Fitzgerald's death.

Appellant's application for workers' compensation death benefits was denied by the administrator's decision on the basis appellant was not the wife of Mr. Fitzgerald. The decision was affirmed by the regional board of review and further appeal to the Industrial Commission was denied. Appeal was taken to the court below pursuant to R.C. 4123.519. Prior to trial the parties stipulated the following:

"1. Harold Fitzgerald died on March 6, 1985, as the result of an accident which occurred during the course and arising out of his employment with Ross Fitzgerald in Adams County, Ohio;

"2. Harold Fitzgerald was an employee of Ross Fitzgerald at the time of his death;

"3. Defendant, Ross Fitzgerald, was amenable to the Workers' Compensation Act as a result of his status as employer of Harold Fitzgerald;

"4. The marriage of Plaintiff, Mary Fitzgerald, and decedent, Harold Fitzgerald, was legally terminated by a Decree of Dissolution filed on October 24, 1984, in the Court of Common Pleas of Adams County, Ohio;

"5. Stipulation as to the authenticity of a HEAP application, copy of which was attached to Plaintiff–Appellant's brief."

In light of the stipulations, the dispositive issue is whether the trial court properly directed a verdict in appellees' favor, for the reason stated in the judgment entry that "construing the evidence most strongly in favor of the Plaintiff, against whom the motion for directed verdict was directed, the Court concluded that upon the determinative issue as to the existence of a mutual agreement to marry *in praesenti,* that reasonable minds could come to but one conclusion upon the evidence submitted, and that is that there was not an agreement to marry *in praesenti* between Mary Fitzgerald and Harold Fitzgerald."

The law of Ohio respecting establishment of common-law marriage as summarized in the *per curiam* opinion of *Nestor v. Nestor* (1984), 15 Ohio St.3d 143, 145, 15 OBR 291, 292, 472 N.E.2d 1091, 1093, is as follows:

"A common law marriage is the marital joinder of a man and a woman without the benefit of formal papers or procedures. Such marriages are not favored in Ohio, but have long been recognized as lawful if certain elements or circumstances are found to be present. *Carmichael v. State* (1861), 12 Ohio St. 553; *Lawrence RR. Co. v. Cobb* (1878), 35 Ohio St. 94; *Ives v. McNicoll* (1899), 59 Ohio St. 402 [53 N.E. 60]; *Umbenhower v. Labus* (1912), 85 Ohio St. 238 [97 N.E. 832]; *Markley v. Hudson* (1944), 143 Ohio St. 163 [28 O.O. 81, 54 N.E.2d 304]. See, also, 45 Ohio Jurisprudence 3d (1983) 428, Family Law, Common–Law Marriage, Section 44.

"The necessary elements in order to establish a common law marriage were set forth by this court in *Umbenhower, supra.* The syllabus provides as follows:

" 'An agreement of marriage *in praesenti* when made by parties competent to contract, accompanied and followed by cohabitation as husband and wife, they being so treated and reputed in the community and circle in which they move, establishes a valid marriage at common law * * *.'

"The fundamental requirement to establish the existence of a common law marriage is a meeting of the minds between the parties who enter into a mutual contract to presently take each other as man and wife. The agreement to marry *in praesenti* is the essential element of a common law marriage. Its absence precludes the establishment of such a relationship even though the parties live together and openly engage in cohabitation. Although

cohabitation and reputation are necessary elements of a common law marriage, this court has previously held that standing alone they do not constitute a common law marriage. *In re Redman* (1939), 135 Ohio St. 554 [29 O.O. 143, 21 N.E.2d 659].

"The contract of marriage *in praesenti* may be proven either by way of direct evidence which establishes the agreement, or by way of proof of cohabitation, acts, declarations, and the conduct of the parties and their recognized status in the community in which they reside. However, all of the essential elements to a common law marriage must be established by clear and convincing evidence. *Markley v. Hudson, supra,* [143 Ohio St.] at 169 [28 O.O. at 84, 54 N.E.2d at 307]; *In re Redman, supra,* [135 Ohio St.] at 558 [29 O.O. at 144, 21 N.E.2d at 661].

"Where there is no direct proof in reference to the formation of the contract of marriage *in praesenti,* testimony regarding cohabitation and community reputation tends to raise an inference of the marriage. This inference is given more or less strength according to the circumstances of the particular case. The inference is generally strengthened with the lapse of time during which the parties are living together and cohabitating as man and wife."

Civ.R. 50(A)(4) codifies the "reasonable minds" test as enunciated in *Hamden Lodge v. Ohio Fuel Gas Co.* (1943), 127 Ohio St. 469, 189 N.E. 246, by providing the following:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

 In *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 67, 23 O.O.3d 115, 116, 430 N.E.2d 935, 936, the court succinctly summarizes the nature of a motion for a directed verdict and the procedure to be followed by stating the following:

"Determining whether 'reasonable minds could come to but one conclusion upon the evidence submitted' does not involve any weighing of the evidence, nor is the court concerned with the credibility of witnesses. This is in contrast to the court's duty when considering a motion for a new trial proffered on the basis that the 'judgment is not sustained by the weight of the evidence.' *Rohde v. Farmer* (1970), 23 Ohio St.2d 82 [52 O.O.2d 82, 262 N.E.2d 685].

"Simply because resolution of a question of law involves a consideration of the evidence does not mean that the question of law is converted into a

question of fact or that a factual issue is raised. This important distinction has been pointed out previously by this court:

" 'A motion for directed verdict or a motion for judgment notwithstanding the verdict does not present factual issues, but a question of law, even though in deciding such a motion, it is necessary to review and consider the evidence.' *O'Day v. Webb* (1972), 29 Ohio St.2d 215 [58 O.O.2d 424, 280 N.E.2d 896], paragraph three of the syllabus.

"When a motion for a directed verdict is entered, what is being tested is a question of law; that is, the legal sufficiency of the evidence to take the case to the jury. This does not involve weighing the evidence or trying the credibility of witnesses; it is in the nature of a demurrer to the evidence and assumes the truth of the evidence supporting the facts essential to the claim of the party against whom the motion is directed, and gives to that party the benefit of all reasonable inferences from that evidence. The evidence is granted its most favorable interpretation and is considered as establishing every material fact it tends to prove. The 'reasonable minds' test of Civ.R. 50(A)(4) calls upon the court only to determine whether there exists any evidence of substantial probative value in support of that party's claim. See *Hamden Lodge v. Ohio Fuel Gas Co.* (1934), 127 Ohio St. 469 [189 N.E. 246]. Weighing evidence connotes finding facts from the evidence submitted; no such role is undertaken by the court in considering a motion for a directed verdict. A motion for a directed verdict raises a question of law because it examines the materiality of the evidence, as opposed to the conclusions to be drawn from the evidence." [3] (Footnotes omitted.)

In applying the above, we would observe the testimony of appellant wherein she testified as follows:

"Q. Now, during that period after the dissolution, did you and him agree that you would be—live together as husband and wife? After the dissolution? Did you and Harold agree that you would live together as husband and wife?

"A. We were husband and wife.

"Q. Yeah, I know, but you had gotten your marriage dissolved. Did you agree that you would continue living together as husband and wife?

"A. Yes.

---

**3.** Because in ruling upon a motion for a directed verdict no factual findings are made by the court, appellant's motion for findings of fact and conclusions of law and the court's entry of such findings were erroneous and said motion should have been denied. See *Paramount Supply Co. v. Sherlin* (1984), 16 Ohio App.3d 176, 16 OBR 186, 475 N.E.2d 197, wherein it was held that findings need not be made when applying the reasonable minds test in a motion for summary judgment adjudication under Civ.R. 56.

"Q. And did you in fact continue living together as husband and wife?

"A. Yes we did."

Since the contract of marriage *in praesenti* may be proven by direct evidence establishing the contract, *Nestor v. Nestor, supra,* it is at least arguable for purposes of a directed verdict, that an express agreement has been established. Assuming *arguendo* such testimony is sufficiently equivocal that it is insufficient in that respect, it does not preclude a determination that such contract of marriage existed. "This court still adheres to the doctrine that it is essential to show an agreement between the parties *in praesenti* to become husband and wife in order to establish a common-law marriage, but this does not mean that such proof must establish an express agreement resulting in contract, *or that such result may not be established by circumstances from which an agreement in praesenti may be inferred.*" (Emphasis added.) *Markley v. Hudson* (1944), 143 Ohio St. 163, 167, 28 O.O. 81, 83, 54 N.E.2d 304, 306.

 While the trial court stated it was utilizing the "reasonable minds" test in granting the motion for directed verdict, the critical question is whether the test was misapplied under the evidence herein. As stated in *Johnson v. Wolford* (1927), 117 Ohio St. 136, 157 N.E. 385, the courts determine the existence or non-existence of common-law marriage on the peculiar facts of each case.

 Under the peculiar facts of this case, and construing the evidence most strongly in favor of appellant, we are persuaded, the credibility of appellant and the weight of their evidence aside, that there is substantial and probative evidence, together with reasonable inferences therefrom, in support of appellant's claim, and that reasonable minds could at least differ as to whether appellant's evidence established by inference a contract *in praesenti*. To sustain the grant of the directed verdict herein we would necessarily have to disregard not only appellant's testimony but the undisputed testimony of the other witnesses of the holding out to others by appellant and the deceased as husband and wife, the undisputed evidence of regular and continuous cohabitation as man and wife and the continued support of appellant and her children by the deceased, all of which is consistent with a marriage status.

The first assignment of error is therefore sustained.

Complaint is made under the second assignment of error of the refusal of the trial court to allow appellant to reopen her case in order to permit her to further testify. This issue is moot in light of our disposition of the first assignment of error. However, we pass on it pursuant to App.R. 12(A). While counsel for appellant sought to ask appellant additional questions, the

record does not disclose what she would have testified to in addition to her trial testimony. Under the circumstances, we find no abuse of discretion and overrule the second assignment of error.

Having sustained the first assignment of error, the judgment is reversed and the cause is remanded for a new trial.

*Judgment reversed*
*and cause remanded.*

GREY and HARSHA, JJ., concur.