**WARREN GENERAL HOSPITAL, Appellee,**

v.

**BRINK, Appellant.**

[Cite as *Warren Gen. Hosp. v. Brink* (1992), 80 Ohio App.3d 793.]

Court of Appeals of Ohio,
Trumbull County.

No. 92–T–4651.

Decided July 27, 1992.

*Bruce W. Bennett,* for appellee.

*Anthony V. Consoldane,* for appellant.

CHRISTLEY, Presiding Judge.

This appeal comes from the Warren Municipal Court. Appellant, Frank E. Brink, Jr., appeals from the trial court's judgment determining that he was Doris Marie Brink's common-law husband and, therefore, liable to appellee, Warren General Hospital, for the medical bills from her last illness.

Appellee provided medical services to Doris Marie Brink, who is now deceased. Appellee was not paid for its services, which caused it to file a complaint against appellant for the unpaid balance. Prior to trial, the parties stipulated that Doris' reasonable medical bills amounted to $4,000. Accordingly, the trial court was to determine whether appellant and Doris Marie

Brink were married, and, if so, whether appellant was liable to appellee for the stipulated amount.

Appellee's first witness was Vera Phillips, Director of Patient Accounts for appellee. She testified that while she did not know who supplied the information for Doris' registration, it reveals that appellant was listed as the person to notify in case of an emergency; his address was listed as 33 Poplar Street, Niles, the same address as Doris Brink's; and, it identifies appellant as Doris' spouse. On cross-examination, the director stated that there was nothing in her records indicating that appellant ever signed any documents, but she was in possession of a document from the Ohio Department of Human Services which was signed by Doris Brink and listed appellant as her husband.

Next, appellee called Rick G. Clark, part owner and funeral director of Robert's Funeral Home. He testified concerning Doris' death certificate. He said that when he completed her death certificate, he used information supplied by appellant. The death certificate reveals that appellant was married to Doris. Additionally, it denotes that both appellant and Doris lived at the same address. Clark then stated that the obituary listed appellant as Doris' husband, and that a single marker for the grave is to display both appellant's and Doris' name. Last, he testified that $255 worth of Doris' bills for funeral expenses were paid with a Social Security death benefit check which appellant gave him, and that from his experience, Social Security will only pay a death benefit to a surviving spouse. On cross-examination, Clark stated that one Betty Bressler was also present when he completed the death certificate and that she also participated in providing him with information.

Next, appellant was called to testify. He said that he told Social Security that he was not married to Doris, but that she lived with him. He also stated that they never filed a joint income tax return and that he never claimed Doris as a dependent. Additionally, he testified that he never married Doris and the only reason they have a joint headstone is because his father donated the cemetery lots. Appellee's attorney pointed out that the income tax forms which were offered into evidence by appellant do not state that they are Doris' returns and that only the 1985 return is signed by Doris. Furthermore, appellant admitted that Doris has lived with him since at least 1981 as her W–2 forms list her home address as 33 Poplar Street from at least that time.

Appellant assigns the following as error:

1. "The trial court erred in finding that a marital relationship existed between the Defendant and the patient."

2. "The Court erred in finding that the Defendant was liable for the patient bill to the Plaintiff."

Because the assignments are interrelated, we will consider them in consolidated fashion.

■ Essentially, appellee must establish that Doris and appellant have entered into a common-law marriage. From the outset we note that R.C. 3105.12, evidence of marriage, has been revised, and Ohio will no longer recognize common-law marriages initiated in Ohio after October 10, 1991. This statute is therefore not applicable to the instant case since the evidence points to a common-law marriage of long standing.

■ Ohio case law states that " '[a]n agreement of marriage *in praesenti* when made by parties competent to contract, accompanied and followed by cohabitation as husband and wife, they being so treated and reputed in the community and circle in which they move, establishes a valid marriage at common law. * * * ' " *Nestor v. Nestor* (1984), 15 Ohio St.3d 143, 145, 15 OBR 291, 292, 472 N.E.2d 1091, 1094, quoting *Umbenhower v. Labus* (1912), 85 Ohio St. 238, 97 N.E. 832, at the syllabus. Additionally, all three of the essential elements must be established by clear and convincing evidence. *Nestor*, 15 Ohio St.3d at 146, 15 OBR at 293, 472 N.E.2d at 1094, citing *Markley v. Hudson* (1944), 143 Ohio St. 163, 28 O.O. 81, 54 N.E.2d 304; *In re Redman* (1939), 135 Ohio St. 554, 14 O.O. 426, 21 N.E.2d 659. Moreover, recognizing that it is often difficult to obtain direct evidence of a present agreement between the parties, the court stated:

"Where there is no direct proof in reference to the formation of the contract of marriage *in praesenti*, testimony regarding cohabitation and community reputation tends to raise an inference of the marriage. This inference is given more or less strength according to the circumstances of the particular case. The inference is generally strengthened with the lapse of time during which the parties are living together and cohabitating as man and wife." *Nestor*, 15 Ohio St.3d at 146, 15 OBR at 293, 472 N.E.2d at 1094.

See, also, *Fitzgerald v. Mayfield* (Nov. 15, 1991), Adams App. No. 516, unreported, 1991 WL 260791.

■ Based on the testimony, there was ample evidence for the trial court to conclude that appellant and Doris Brink had entered into a common-law marriage of long standing. There was evidence that they cohabitated and that they held themselves out to the community as husband and wife and were considered as such. From this, the present agreement could be inferred.

■ Because the trial court found that appellant was married to Doris, it was correct in ordering appellant to pay appellee for her medical bills. In *Cleveland Metro. Gen. Hosp. v. Oleksik* (1987), 38 Ohio App.3d 21, 525 N.E.2d 831, the court decided that " 'both spouses are liable for necessary expenses

incurred by either spouse in the course of the marriage.'" *Id.*, at 23, 525 N.E.2d at 833, quoting *Jersey Shore Med. Ctr.–Fitkin Hosp. v. Estate of Baum* (1980), 84 N.J. 137, 141, 417 A.2d 1003, 1005. More specifically, each spouse is liable for the other's medical bills incurred in the last illness even when they have not directly contracted for them. *Id.*

The trial court did not err when it found appellant was Doris' common-law husband. Therefore, it was correct in ordering him to pay her medical bills.

Based on the foregoing, the judgment of the trial court is affirmed.

*Judgment affirmed.*

NADER and HARSHA, JJ., concur.

WILLIAM H. HARSHA III, J., of the Fourth Appellate District, sitting by assignment.