In re ESTATE OF SHEPHERD.

[Cite as *In re Estate of Shepherd* (1994), 97 Ohio App.3d 280.]

Court of Appeals of Ohio,
Marion County.

No. 9-94-26.

Decided Oct. 25, 1994.

*Ronald Starkey,* for appellant.

*Michael S. Miller,* for appellee guardian *ad litem.*

EVANS, Judge.

Denise Shepherd appeals from a judgment of the Marion County Common Pleas Court, Probate Division, granting a motion of Robert W. Wilson, guardian *ad litem,* to revoke her appointment as administrator of Alan Shepherd's estate. For the reasons that follow, the judgment of the trial court is affirmed.

I

Denise Shepherd ("appellant") ceremonially married Alan Shepherd ("decedent") on October 27, 1984, in Marion, Ohio. They were divorced on August 14, 1989. Following their divorce, the decedent lived with appellant until February 1991. At that time, the decedent moved to Michigan to seek employment. The decedent returned to Marion in September 1991. Upon his return, appellant and decedent cohabited in Marion until his death on April 7, 1992. He died intestate.

On April 9, 1992, the Marion County Common Pleas Court, Probate Division, appointed appellant the administrator of the decedent's estate. On November 12, 1992, the trial court appointed Robert Wilson guardian *ad litem* to investigate whether appellant was the common-law wife of the deceased. On December 31, 1992, the guardian *ad litem* moved to revoke the letters of administration issued by the trial court, contending that appellant was not the common-law wife of the decedent, and therefore could not serve as administrator under R.C. 2113.06.[1]

During June 1993, the trial court conducted a two-day evidentiary hearing on the guardian *ad litem*'s motion to revoke appellant's appointment as the administrator of the estate. On January 27, 1994, the trial court ruled that no common-law marriage existed, because there was no agreement to marry *in praesenti*. Finding that no common-law or ceremonial marriage existed, the trial court concluded that appellant did not meet the definition of a "surviving spouse," and was therefore ineligible to serve as the administrator under R.C. 2113.06(A). However, before granting the guardian *ad litem*'s motion to remove appellant as the administrator, the trial court continued the case so that appellant could present evidence that would entitle her to remain as the administrator under the "suitable person" provision of R.C. 2113.06(B).

On February 18, 1994, appellant filed her notice of appeal from the January 27, 1994 judgment entry. On March 3, 1994, this court *sua sponte* dismissed the appeal for lack of a final appealable order, because the trial court only conditionally sustained the guardian *ad litem*'s motion to remove appellant as the administrator of the estate, pending a hearing on the suitability of appellant for appointment as administrator. On April 8, 1994, the parties entered into a joint stipulation and journal entry, whereby appellant withdrew her request to remain the administrator pursuant to the suitability provision of R.C. 2113.06(B). From this judgment entry, appellant brings her appeal, contending that she established the existence of a common-law marriage by clear and convincing evidence.

## II

Appellant asserts one assignment of error for our review:

"The decision of the trial court that Administrator Denise M. Shepherd failed to prove by clear and convincing evidence a common-law marriage agreement in

---

1. R.C. 2113.06 provides:

"Administration of the estate of an intestate shall be granted to persons mentioned in this section, in the following order:

"(A) To the surviving spouse of the deceased, if resident of the state;

"(B) To one of the next of kin of the deceased, resident of the state. * * *

" * * * If there are no persons entitled to administration, * * * the court shall commit the administration to some suitable person who is a resident of the state."

praesenti between Administrator and Alan K. Shepherd accompanied and followed by cohabitation as husband and wife was clearly erroneous and against the manifest weight of the evidence."

 It is well established that a reviewing court is guided by a presumption of correctness of the trial court proceedings and judgment. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411, 461 N.E.2d 1273, 1276. Thus, as a reviewing court, we must defer to that presumption when an appellant complains that the judgment is against the manifest weight of the evidence, if, after a thorough review of the record, we find that there is any "competent, credible evidence" that supports the judgment. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280, 8 O.O.3d 261, 262, 376 N.E.2d 578, 579; *Parker v. Parker* (1993), 86 Ohio App.3d 727, 737, 621 N.E.2d 1229, 1235–236. The Ohio Supreme Court further admonishes that an appellate court must not substitute its judgment for that of the trial court based upon its own opinion as to the veracity of the witnesses or the reliability of the evidence presented, as the trier of fact is in the best position to make such determinations. *Security Pacific Natl. Bank v. Roulette* (1986), 24 Ohio St.3d 17, 19–21, 24 OBR 14, 15–18, 492 N.E.2d 438, 439–441.

 With these standards in mind, we turn to appellant's contention that the trial court's decision was against the manifest weight of the evidence. The trial court found that the only issue in this case is whether the decedent and appellant formed an agreement to marry *in praesenti* between August 14, 1989, the effective date of their divorce, and October 10, 1991, the date that Ohio abolished common-law marriages. If the decedent and appellant did not form the present agreement to marry, then appellant could not maintain her position as administrator under the surviving spouse provision of R.C. 2113.06(A).

Effective October 10, 1991, R.C. 3105.12(B)(1) prohibits common-law marriages in Ohio; however, under R.C. 3105.12(B)(2), the grandfather clause, common-law marriages established prior to the enactment of the statute remain valid. Appellant contends that she falls under the provisions of the grandfather clause.

The Ohio Supreme Court in *Nestor v. Nestor* (1984), 15 Ohio St.3d 143, 146, 15 OBR 291, 292–293, 472 N.E.2d 1091, 1094 (*per curiam* ), set forth the necessary elements and proof requirements for the demonstration of a common-law marriage:

"The fundamental requirement to establish the existence of a common law marriage is a meeting of the minds between the parties who enter into a mutual contract to presently take each other as man and wife. The agreement to marry *in praesenti* is the essential element of a common law marriage. Its absence precludes the establishment of such a relationship even though the parties live

together and openly engage in cohabitation. Although cohabitation and reputation are necessary elements of a common law marriage, this court has previously held that standing alone they do not constitute a common law marriage. *In re Redman* (1939), 135 Ohio St. 554 [14 O.O. 426, 21 N.E.2d 659].

"The contract of marriage *in praesenti* may be proven either by way of direct evidence which establishes the agreement, or by way of proof of cohabitation, acts, declarations, and the conduct of the parties and their recognized status in the community in which they reside. However, all of the essential elements to a common law marriage must be established by clear and convincing evidence. *Markley v. Hudson, supra* [ (1944), 143 Ohio St. 163] at 169 [28 O.O. 81, at 84, 54 N.E.2d 304, at 307]; *In re Redman, supra* [135 Ohio St.], at 558 [14 O.O. at 428, 21 N.E.2d at 661].

"Where there is no direct proof in reference to the formation of the contract of marriage *in praesenti,* testimony regarding cohabitation and community reputation tends to raise an inference of the marriage. This inference is given more or less strength according to the circumstances of the particular case. * * * "

Some of the evidence presented at trial relative to the trial court's determination that there was no agreement to marry *in praesenti* included federal and state income tax forms signed by appellant and the decedent declaring themselves single, federal bankruptcy petitions filed by both parties that listed them as single, the fact that appellant boxed and shipped the decedent's possessions to him when he lived in Michigan, and the fact that the decedent dated two separate women while living in Michigan.

At deposition, when asked the date the common-law marriage with the decedent began, appellant responded: "When we got married in 1984." Appellant's statement that she considered herself the common-law wife of the decedent from the date of the ceremonial marriage is a clear admission that there was no agreement to marry *in praesenti* after the divorce. See *Minnix v. Brantner* (1952), 48 O.O. 450, 107 N.E.2d 562 (holding that where the plaintiff admitted that there was no agreement *in praesenti* to become husband and wife for the reason that he disregarded the divorce decree, he failed to meet the requirements of a common-law marriage). The lack of an agreement to marry *in praesenti* is substantiated by several statements made by appellant that she intended to marry and renew her vows with the decedent in the future. For example, during the evidentiary hearing, appellant testified as follows during cross-examination:

"Q. * * * [H]ad you intended at some time after you received those [divorce] papers to get remarried?

"A. We had intended to reaffirm our vows in front of our friends, because we had gotten into church and that's what we wanted to do[.]"

Appellant, on the other hand, produced loan documents, consumer contracts, utility bills, insurance policies, and credit bills to establish that appellant and decedent were considered married in the Marion community. Additionally, testimony elicited at trial by appellant indeed established that some members of the community considered appellant and decedent married.

The relevant inquiry, however, is whether the parties had a present agreement to marry. The trial court found appellant's testimony established only an intent to marry in the future. A mutual promise to marry in the future, though made by parties competent to contract, and followed by cohabitation as husband and wife, is not, in itself, a valid marriage. *Duncan v. Duncan* (1859), 10 Ohio St. 181, syllabus. Testimony by the decedent's mother confirms that the parties planned to reunite in the future, thus negating any allegation that there was a contract *in praesenti* to become husband and wife.

There is little evidence supporting appellant's claim of the existence of an agreement to marry *in praesenti*. The trial court had the opportunity to view all of the evidence and hear the testimony of the witnesses and found that the evidence fell short of clear and convincing proof of the existence of an agreement to marry *in praesenti*. After a review of the record, we find ourselves in agreement with the trial court that appellant failed to establish the claimed common-law marriage by clear and convincing evidence. We also find competent, credible evidence in the record to support the decision of the trial court. *C.E. Morris Co. v. Foley Constr. Co., supra.* We therefore find that the trial court's decision was not against the manifest weight of the evidence and overrule appellant's assignment of error.

### III

Having found no error prejudicial to appellant herein in the particulars assigned and argued, we affirm the judgment of the Marion County Common Pleas Court, Probate Division.

*Judgment affirmed.*

SHAW, P.J., and THOMAS F. BRYANT, J., concur.