Defendant-appellant, Johnny Bowling, appeals a judgment of the Butler County Court of Common Pleas, Probate Division, which declared plaintiff-appellee, Laura Deaton, the sole heir of Mary Viola Henry aka Mary Viola Bowling ("Viola").
Viola died on November 10, 1995. Under her will, appellee, Viola's only child, was named executor and sole heir. On May 6, 1996, appellee filed a complaint in the probate court to determine heirship under R.C. 2123.01. The complaint was precipitated by appellant's claim that he was Viola's common-law husband.
At trial, appellant presented evidence that he and Viola had been living together since 1984. Appellant testified that Viola had said they "would have to be married" before he could move in with her. Appellant testified that they purchased a ring and that he put the ring on her finger and "told her we was married as far I was concerned and she agreed." He testified that Viola introduced him to friends and family as her husband and that they went on trips together related to his trucking business. He later testified that Viola was not satisfied with the ring exchange and that they therefore took rings with them on a trucking trip. They stopped in a small town in Alabama and discussed getting married, however, the courthouse was closed. Appellant testified that they then "told each other we loved each other" and "[w]e felt, to her and I we didn't need no more papers."
Appellant further testified that they considered themselves married from that point on and that Viola "showed her rings around." Several friends and relatives, including Viola's sister, niece, and cousins, testified that Viola had told them that she and appellant were married. Appellant introduced evidence showing that they had financed and sold certain real estate together. A signature of "Viola Henry Bowling" appeared on various papers relating to that real estate. Appellant also introduced hospital bills from Viola's last illness in the name of Mary V. Bowling. Appellant testified that Viola had given the medical providers that name.
Viola had been married to Bill C. Henry who died in 1983. Appellant testified that he knew before their purported marriage that Viola was receiving regular workmen's compensation checks due to Bill C. Henry's death in Kentucky. Appellant testified that Viola took steps to prevent the insurance company from finding out that she was married. These steps included maintaining a separate bank account, filing individual tax returns, and limiting appellant's contact with members of her deceased husband's family.
Appellee presented testimony from Viola's mother who stated that Viola had told her the relationship she had with appellant was "a business deal." However, Viola's mother acknowledged that the parties lived together and had spent the night together in her home on at least one occasion. Appellee also testified that her mother had told her that the relationship was a business deal. Furthermore, appellee introduced letters from Viola to the workmen's compensation insurance company from 1986, 1987, and 1990. In all three letters Viola stated that she had not remarried since the death of her husband, Bill C. Henry.
The trial court determined that no common-law marriage came into existence in Ohio prior to October 10, 1991.[1] The court also determined that no common-law marriage had existed between appellant and decedent under the laws of any state or nation which recognized common-law marriages. The trial court found that for a valid common-law marriage, both Alabama and Ohio law required a "present agreement" to marry followed by cohabitation and public recognition of the existence of the marriage. The trial court specifically found that there was no clear and convincing evidence of a contract of marriage in praesenti between Viola and appellant. Appellee was therefore named Viola's sole heir.
In his sole assignment of error, appellant contends:
 THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE IN FAILING TO FIND THAT A Common-law marriage EXISTED BETWEEN APPELLANT AND HIS DECEASED PARTNER/SPOUSE.
Appellant argues specifically that the trial court failed to consider his direct evidence of a "meeting of the minds" and that the determination that he had failed to prove a meeting of the minds was against the manifest weight of the evidence.
A common-law marriage is established when the following elements are shown: (1) an agreement of marriage in praesenti; (2) cohabitation as husband and wife; and (3) a holding out by the parties to those with whom they normally come into contact, resulting in a reputation as a married couple in the community. State v. DePew (1988), 38 Ohio St.3d 275, 279; Nestor v. Nestor (1994), 15 Ohio St.3d 143. Alabama law similarly requires a "present agreement, that is a mutual understanding to enter at that time into the marriage relationship, permanent and exclusive of all others. This agreement must be followed by the public recognition of the existence of the `marriage' and the cohabitation or mutual assumption openly of marital duties and obligations." Etheridge v. Yeager (Ala. 1985), 465 So.2d 378.
The proponent of a common-law marriage bears the burden of establishing each of its elements by clear and convincing evidence. In re Estate of Shepherd (1994), 97 Ohio App.3d 280. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." Cork v. Bray (1990), 52 Ohio St.3d 35, 38. In either a criminal or civil case the weight to be given the evidence and the credibility of the witnesses is primarily for the trier of the facts. State v. DeHass (1967), 10 Ohio St.2d 230.
The element of cohabitation was clearly established by the evidence. The element of holding out was also arguably shown, however all three elements must be shown by clear and convincing evidence. Warren Gen. Hosp. v. Brink (1992), 80 Ohio App.3d 793. Thus, the central issue presented by this appeal is whether the parties entered into an in praesenti agreement to marry. An in praesenti agreement to marry exists where there is "a meeting of the minds between the parties who enter into a mutual contract to presently take each other as man and wife." Nestor at 146; Mullins v. Mullins (1990), 69 Ohio App.3d 167,169. The agreement to marry in praesenti is the essential element of a common-law marriage; its absence precludes the establishment of a common-law marriage even though the parties live together and openly engage in cohabitation. Nestor at 146; In re Estate of Hall (1990), 67 Ohio App.3d 715, 719.
Courts determine the existence or non-existence of common-law marriages on the peculiar facts of each case. Fitzgerald v. Mayfield (1990), 66 Ohio App.3d 298. In some cases common-law marriages may be recognized even though the parties, jointly or individually, have denied the existence of the marriage to particular family members. See Fitzgerald v. Mayfield (son); Nestor v. Nestor (mother). However, such inconsistencies generally have no attendant legal consequences. In the instant case, Viola and appellant both knew that if she married, she would immediately be ineligible for continued benefits on her deceased husband's workmen's compensation claim. Viola's continued receipt of those benefits and her written statements to the insurance company constitute clear and convincing evidence that she consciously chose to forego the institution of marriage and its attendant consequences. Although appellant presented some direct evidence of an agreement to marry, this strong conflicting evidence supports the trial court's finding of no agreement to marry in praesenti. We find that the judgment of the trial court was not against the manifest weight of the evidence. Accordingly, appellant's assignment of error is overruled.
Judgment affirmed.
WALSH and POWELL, JJ., concur.
[1] On October 10, 1991, the legislature abolished an individual's right to enter into a common-law marriage. R.C. 3105.12(B)(1). However, those common-law marriages which occurred prior to October 10, 1991, remained valid. R.C. 3105.12(B)(2).