OPINION
Plaintiff-appellant, Bonnie J. Prince, appeals the decision of the Clermont County Court of Common Pleas, Probate Division, finding that she was not the common-law wife of decedent, Ronnie C. Stamper ("Ronnie"), and declaring that defendant-appellee, Amy M. Lawson, Ronnie's daughter, is Ronnie's sole heir and next of kin. We affirm.
On February 5, 1998, appellant filed a complaint against appellee to determine heirship. Appellant and appellee are Ronnie's only apparent heirs. At dispute is Ronnie's estate, which includes his pension and worker's compensation benefits. In her complaint, appellant asserted that she was Ronnie's common-law wife, and that she was entitled to a distribution from his estate. Appellee responded that she was Ronnie's sole heir.
On October 28, 1998, the probate court held a hearing on the matter. Both parties presented several witnesses and introduced a number of exhibits. The parties' witnesses presented very different descriptions of the relationship between appellant and Ronnie, and the documentary evidence was conflicting.
In 1986, appellant and Ronnie began living together in an apartment outside of Cincinnati, Ohio. Appellant and Ronnie either lived together or maintained a relationship until Ronnie's death from terminal cancer in late 1997. When the relationship began, appellant was married to Norman D. Prince, although she had been estranged from Prince since 1982.
In 1987, appellant and Ronnie bought a house and property in New Richmond, Clermont County, Ohio ("New Richmond house"). When they purchased the house, the deed was put in appellant's name. Appellant disclosed her marriage to Ronnie in late 1989. As a result, Ronnie had her move out for a number of months. The couple reconciled, and in 1992, Ronnie's name was added to the deed.
On February 5, 1990, appellant obtained a divorce from Prince. According to appellant, soon thereafter she and Ronnie sat together in their dining room and made vows to one another. There were no witnesses, and the couple did not make any type of announcement. Appellant believes that she and Ronnie have been "married" since that time. Ronnie's family believes otherwise, based upon statements by Ronnie that he would never marry appellant because she did not disclose her earlier marriage for so long.
In 1991, appellant and Ronnie opened a joint checking account, with a right of survivorship. In 1992, Ronnie's name was added to the mortgage on the New Richmond house. They signed the mortgage and the subsequent warranty deed together, but listed themselves as unmarried on both forms. In March 1993, they obtained an $8,000 loan from appellant's credit union, with appellant as the principal borrower and Ronnie as the co-signer.
In 1993, appellant and Ronnie had a falling out, and appellant left the New Richmond house. She returned to her own family home in Loveland, Ohio. Appellant contends that she soon returned to the New Richmond house, although Ronnie's family contends otherwise. Appellant testified that she returned after only a few months and that she stayed until shortly before Ronnie's death.
Appellant testified on her own behalf to establish that a common-law marriage existed. She testified that she and Ronnie arranged vacations from their respective jobs to coincide so that they could vacation together. They attended a variety of functions as a couple, and she contended that they held themselves out to be a married couple. Appellant also introduced a 1997 letter from Ronnie's pension fund in which she was listed as its beneficiary upon his death.
Appellant called a number of witnesses, each of whom testified that they considered appellant and Ronnie to have been married. These witnesses testified that appellant and Ronnie introduced themselves as married. Appellant also introduced a wedding invitation and a bridal shower invitation addressed to "Mr. and Mrs. Ronnie Stamper." Appellant contended that this evidence was sufficient to display an intent to be married at common law and to prove that she and Ronnie held out themselves as married.
Appellee presented evidence vastly different from that of appellant. Appellee and other Stamper family members testified that they did not believe that appellant and Ronnie were married. These individuals testified that Ronnie had never claimed that appellant was his wife. In fact, each witness testified that Ronnie had stated that he would never marry appellant because during their courtship she had concealed her earlier marriage. Appellee also called as a witness a close friend of Ronnie's who testified that Ronnie did not consider himself to be married to appellee.
Appellee's witnesses testified that appellant had not lived with Ronnie for a number of years. They testified that after Ronnie had been diagnosed with terminal cancer, appellant had rarely visited. Appellee also presented evidence that appellant had maintained a separate residence throughout her time with Ronnie. Appellee and her witnesses testified that they, not appellant, had taken care of funeral arrangements upon Ronnie's death.
Appellee introduced a number of exhibits as proof that appellant and Ronnie had never been married at common law. Most important, tax returns from 1992 to 1997 were admitted into evidence. In these years, appellant and Ronnie had filed separate returns in which both claimed to be single. In addition, appellant and Ronnie listed different addresses on these returns. Ronnie listed the New Richmond house as his residence, while appellant listed her separate residence in Loveland, Ohio. Appellee also relied upon the loan and warranty deed documents in which appellant and Ronnie had listed themselves as unmarried. Furthermore, Ronnie's worker's compensation claim in 1996 and his death certificate listed him as being divorced.
On November 20, 1998, the probate court filed its decision finding that appellant was not Ronnie's common-law wife. Based upon the evidence presented, the probate court determined that appellant had failed to present clear and convincing evidence of a common-law marriage. The probate court ruled that appellee was Ronnie's sole heir and next of kin. Appellant appeals, raising a single assignment of error:
 THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF PLAINTIFF-APPELLANT BY ENTERING A JUDGMENT WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 In her sole assignment of error, appellant contends that she presented clear and convincing evidence which tended to establish that a common-law marriage existed. Appellant argues that the evidence demonstrated that she and Ronnie held themselves out as a married couple, and that others believed them to be married.
Effective October 10, 1991, R.C. 3105.12(B)(1) prohibits common-law marriages in Ohio. However, under R.C. 3105.12(B)(2), the grandfather clause, common-law marriages established prior to the enactment of the statute remain valid. Appellant contends that she falls under the provisions of the grandfather clause.
A common-law marriage is established when the following elements are proven: (1) an agreement of marriage in praesenti; (2) cohabitation as husband and wife; and (3) a holding out by the parties to those with whom they normally come into contact, resulting in a reputation as a married couple in the community.State v. DePew (1988), 38 Ohio St.3d 275, 279, certiorari denied (1989), 489 U.S. 1042, 109 S.Ct. 1099, appeal dismissed (1994),70 Ohio St.3d 1219; Nestor v. Nestor (1984), 15 Ohio St.3d 143, 145. The proponent of a common-law marriage bears the responsibility of establishing each of its elements by clear and convincing evidence. In re Estate of Shepherd (1994), 97 Ohio App.3d 280,284. Clear and convincing evidence is that degree of proof which produces in the mind of the trier of fact "a firm belief or conviction as to the allegations sought to be established." Corkv. Bray (1990), 52 Ohio St.3d 35, 38, 555 N.E.2d 936. In determining whether a party has presented clear and convincing evidence of a common-law marriage, the weight to be given the evidence and the credibility of witnesses is the function of the trier of fact. Deaton v. Bowling (Oct. 19, 1998), Butler App. No. CA97-12-249, unreported.
The fundamental requirement to establish the existence of a common-law marriage is a meeting of the minds between the parties, who enter into a mutual contract to presently take each other as man and wife. This is the agreement of marriage in praesenti.Nestor, 15 Ohio St.3d at 146. Even if a party proves cohabitation and reputation, the lack of an agreement of marriagein praesenti will be fatal to any claim that there is a common-law marriage. Id.; In re Estate of Hall (1990), 67 Ohio App.3d 715,719. Where there is no direct proof of the formation of the contract of marriage in praesenti, testimony regarding cohabitation and reputation may raise an inference of marriage. The strength of this inference will depend upon the circumstances of the individual case. Nestor, 15 Ohio St.3d at 146.
In proving cohabitation, there must be proof that the parties had sexual activity in the open manner of husband and wife in a marital state. Id. Secret cohabitation or attempts to conceal sexual activity will not suffice as evidence of a valid common-law marriage. Id.
In order to establish the element of reputation, it is not necessary that the parties disseminate information to all society or to all of the community in which they reside. Instead, the parties must hold out themselves as married to those with whom they normally come in contact. Id. A common-law marriage will not necessarily be defeated by the fact that all persons in the community are not aware of the marital arrangement, nor by the fact that some of those with whom the parties have contact are also unaware of the arrangement. Id.; see Fitzgerald v. Mayfield
(1990), 66 Ohio App.3d 298, jurisdictional motions overruled,53 Ohio St.3d 705.
In determining whether a decision is against the manifest weight of the evidence, judgments that are supported by some competent, credible evidence going to all of the essential elements of a case will not be reversed by a reviewing court.C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279,280. When resolving a manifest weight of the evidence claim, the function of an appellate court is not to weigh the evidence and pass upon its sufficiency, Betsy Ross Foods, Inc. v. Akron,Canton Youngstown Railway Co. (1983), 13 Ohio App.3d 145, 147, nor should the reviewing court usurp the function of the trier of fact by substituting its judgment for that reached by the trier of fact. The appellate court's limited role is to ascertain whether competent, credible evidence supports the judgment.
In the present case, we cannot say that the trial court reached an incorrect decision. There was substantial conflict in the evidence presented at the hearing on appellant's complaint. The disputed evidence did not concern any single element that appellant was required to prove. Rather, every element needed to establish a common-law marriage was contested by the parties.
We cannot say that appellant established by clear and convincing evidence that there was an agreement of marriage inpraesenti. Appellant testified that she and Ronnie made vows to one another in 1990, after appellant had obtained a divorce from Donald Prince. There were no witnesses to this event, and appellant could not offer any proof of its occurrence other than her own testimony. Appellee presented testimony from a number of persons that Ronnie had stated that he would never marry appellant because she had concealed her earlier marriage during their courtship. These witnesses included Ronnie's family and friends.
Appellant also failed to prove cohabitation by clear and convincing evidence. Appellant admitted that she had moved out of the New Richmond house at least once. Throughout the alleged marriage, appellant maintained a separate residence in Loveland, Ohio. She listed this separate residence as her address on tax returns for a number of years. Ronnie's family testified that appellant had not lived with Ronnie for a number of years, and that she had little contact with him after he was diagnosed with terminal cancer. Appellee's witnesses also claimed Ronnie had, in recent years, considered appellant only a friend. Appellant and her witnesses contested these allegations, but it is for the trial court to resolve such evidentiary disputes, not this court. There was sufficient conflict in the evidence to warrant a finding that clear and convincing evidence of cohabitation was not presented by appellant.
Appellant failed to establish reputation by clear and convincing evidence. Although appellant and her witnesses claimed that the couple had held themselves out as married, and that their families and friends considered them married, appellee's evidence contradicted that of appellant. Appellant presented invitations addressed to "Mr. and Mrs. Stamper," but appellee presented substantial documentary evidence which would tend to show that the couple did not consider themselves married. On loan documents, warranty deeds, and tax returns, appellant and Ronnie listed themselves as unmarried. Ronnie's worker's compensation claim and death certificate contained no indication that he was married. Even though some family members may have thought the couple was married, the trial court could reasonably find that appellant had failed to produce clear and convincing evidence that appellant and Ronnie held out themselves as a married couple.
We find that the trial court did not err in finding that appellant had failed to prove a common-law marriage and in ruling that appellee is the sole heir and next of kin of Ronnie Stamper. Accordingly, appellant's assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and VALEN, J., concur.