OPINION
The defendants-appellants, Lawrence and Betty Baker ("appellants"), appeal the judgment of the Clinton County Court of Common Pleas, Division of Domestic Relations, finding that the plaintiff-appellee, Lori Baker ("appellee"), and Tracey Baker were married by common law in 1987. They further appeal the decision that they are not entitled to compensation for their efforts to save the marital home of the appellee and Tracey Baker. For the following reasons, we affirm the judgment of the trial court.
The pertinent facts and procedural history in this matter are as follows. The appellee and Tracey Baker[1] were married in 1982 and divorced in 1985. There were two children born as issue of this marriage. In approximately May of 1987, the couple and their children began living together again. Tracey asked the appellee to marry him and gave her an engagement ring, however an official ceremony never took place. The record reveals the following facts in support of the contention that the couple had formed a common law marriage. The couple continued to live together and introduced each other as husband and wife. Tracey placed the appellee on his health insurance as his wife and the appellee made out a will, power of attorney, and living will indicating that Tracey was her husband. Tracey purchased real estate and the deed indicated that he was a married man and the appellee signed off on her dower rights on the mortgage. The parties filed joint tax returns and received mail as husband and wife. Furthermore, in his answer to the divorce complaint, Tracey admitted that he was in fact married to the appellee.
On September 22, 1997, Tracey Baker was arrested and charged with obstruction of justice, tampering with evidence, and gross abuse of a corpse, in connection with the murder of Carrie Culbertson.[2] After his arrest, Tracey transferred the couple's home, located at 215 South Supinger Street, Blanchester, to the appellants, his parents. The appellants allege that they were attempting to save the property from foreclosure. While the property had an appraised value of $80,000, the appellants received the property for $46,800. The transfer of the property was done subsequent to the appellee's filing of her divorce complaint.[3]
On November 10, 1998, a hearing was held in this matter and on February 26, 1999, the Magistrate issued a decision. The Magistrate found that the appellee and Tracey were married under common law and that the appellants had attempted to "save" the property for the sake of their grandson, at the expense of the appellee. The Magistrate refused to reimburse the appellants for their "efforts to deprive Lori (the appellee) of her marital interest."
The appellants filed a Motion to Set Aside and Objections to the Magistrate's Decision on March 10, 1999. This motion was overruled on May 12, 1999 and the Final Decree of Divorce was filed on December 30, 1999. It is from this judgment that the appellants now appeal, asserting two assignments of error.
 Assignment of Error No. 1
The trial court erred in holding that Lori J. Baker and Tracey J. Baker had entered into a common law marriage in May of 1987.
The appellants contend that the trial court's decision that a common law marriage existed is against the manifest weight of the evidence and contrary to law. For the following reasons, we disagree.
Although common law marriages were prohibited in Ohio by statutory amendment after October 10, 1991, common law marriages that occurred prior to that date continue to be recognized. R.C.3105.12(B)(1)(2), Lyon v. Lyon (1993), 86 Ohio App.3d 580. Common law marriages that occurred prior to October 10, 1991 remain valid unless terminated by death, divorce, dissolution of marriage, or annulment. Id.
A person seeking to establish a common law marriage must prove four elements:
 (1) a mutual agreement to marry in praesenti, made by parties competent to marry,
(2) cohabitation as husband and wife,
 (3) a holding of themselves out as husband and wife in the community in which they live, and
 (4) being regarded as husband and wife in the community in which they live.
Nestor v. Nestor (1984), 15 Ohio St.3d 143, 145-46, Mullins v. Mullins (1990), 69 Ohio App.3d 167. The party seeking to establish the fact of a common law marriage must do so by proving each and every element thereof by clear and convincing evidence. Nestor, 15 Ohio St.3d at 145, Markley v. Hudson (1944), 143 Ohio St. 163, 169.
The appellants allege that the appellee has failed to meet the first and most fundamental requirement in establishing a common law marriage, an agreement to marry in praesenti. The appellants claim that there was never a meeting of the minds between the parties to presently take each other as husband and wife. The contract of marriage in praesenti may be proven either by way of direct evidence, which establishes the agreement, or by way of proof of cohabitation, acts, declarations, and the conduct of the parties and their recognized status in the community in which they reside. Markley, 143 Ohio St. 163.
The record in this matter is replete with evidence in support of the formation of a common law marriage. The parties cohabitated with their two children from 1987 until 1996, the appellee was added to Tracey's health insurance as his wife, the deed to the house in question listed Tracey as a married man and the appellee was required to sign away her dower interests, and the appellee's will refers to Tracey as her husband. The parties held themselves out to the community as husband and wife, received mail addressed to Mr. and Mrs. Baker, and filed joint income tax returns. In his criminal case, Tracey attempted to limit the appellee's testimony against him by claiming spousal immunity. Even more damaging to the appellant's contention is the fact that in his answer to the divorce complaint, Tracey admitted that he and the appellee were "remarried by common law in or about May of 1987."
The trial court determined that the necessary elements to establish a common law marriage had been proven by clear and convincing evidence. This decision is clearly supported by the evidence in this case. Accordingly, the appellants' first assignment of error is overruled.
 Assignment of Error No. 2
Assuming arguendo that there was a common law marriage, the trial court erred when it held that appellants, Lawrence and Betty Baker should receive nothing for their payments to save the real estate.
The appellants contend that the trial court erred in ruling that they were not entitled to any of the proceeds from the sale or to be reimbursed for the monies spent on the marital residence. For the following reasons, we agree with the findings of the trial court.
Having found that a valid marriage existed between the appellee and Tracey Baker, the property in question, 215 S. Supinger St., is clearly marital property. R.C. 3105.171. It was purchased during the marriage with marital assets. Tracey Baker transferred the property to the appellants for no consideration to him or the appellee. The appellants took out a mortgage on the property in the amount of $46,800. The proceeds were used to pay off the first mortgage and a lien[4] on the property, with the remainder being used towards Tracey's mounting legal fees. Not only did the appellee not realize a profit from the transfer of the house, the appellants increased the total liens on the property by almost $5000.00.[5]
The appellants claim that their purpose for having Tracey transfer the property was to obtain the house for the future use of their grandson. Regardless of the appellants' motivation, the result is that they facilitated their son's efforts to deprive the appellee of her marital interest in the house. The facts in this case are analogous to those in Leathem v. Leathem (1994), 94 Ohio App.3d 470
. In Leathem, the husband conveyed the parties' marital residence to their son, to hold as trustee. The court deemed the conveyance to be a constructive or actual fraud upon the wife because it was an attempt to defeat any rights she may have had in the marital residence as marital property. Id. at 473. Similarly, in this case the trial court held that it would "not be possible nor proper to reimburse Betty and Lawrence Baker from marital property funds for the costs of their efforts to deprive Lori of her marital interest."
It must also be noted that the appellants testified that they were fully aware that the appellee had commenced divorce proceedings in this matter prior to the date of the transfer. The appellee's divorce complaint specifically listed the property in question as property acquired by the parties and subject to division by the court. This fact provides additional insight into the appellants' state of mind and creates doubt as to whether their intentions were truly as noble as they now contend.
The trial court correctly held that the appellants were not entitled to a portion of the proceeds from the sale of the house, nor to be reimbursed for any out-of-pocket expenses they incurred in maintaining the house. Accordingly, the appellants' second assignment of error is overruled.
Having found no error prejudicial to the appellants herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
WALTERS and SHAW, JJ., concur.
(HADLEY, P.J., WALTERS, J. and SHAW, J., of the Third Appellate District, sitting by assignment in the Twelfth Appellate District.)
[1] Tracey Baker is also a named defendant-appellant in this case. However, Tracey is not a party to this appeal.
[2] Tracey Baker was subsequently found guilty of obstruction of justice and tampering with evidence and was sentenced to eight years in the Ohio Department of Rehabilitation and Corrections.
[3] The appellee filed her complaint for divorce on December 23, 1997. The property was transferred to the appellants on December 31, 1997. The appellants testified that they were aware that the appellee had filed for divorce at the time of the closing.
[4] The record reveals that Tracey and the appellee borrowed $2400.00 to replace the windows in the home. This loan was secured by a lien on the property.
[5] Prior to the transfer, there was a first mortgage on the property in the amount of $39,607 and a second mortgage of $2400, for a total of $42,007. The appellants mortgaged the property for $46,800.