OPINION
{¶ 1} Defendants-appellants, Stephanie Coffey and Stacy Coffey, appeal the decision of the Clermont County Court of Common Pleas, Probate Division, finding that plaintiff-appellee, Vicki Polly, was the common-law wife of decedent, Steven Coffey. We affirm the decision of the trial court.
 {¶ 2} Steven Coffey died unexpectedly on September 11, 2001 while on a camping trip with Polly and several other friends. Coffey was survived by appellants and Polly. Appellants are his two adult children. He was estranged from them throughout their childhood and adolescence, and had only recently re-established a relationship with them. Coffey died intestate, and although the parties initially came to an agreement as to the distribution of Coffey's estate, that agreement was never implemented. Polly subsequently brought suit to determine heirship, alleging that she was Coffey's common-law wife. The trial court held a hearing on the matter at which the parties presented several witnesses and introduced a number of documentary exhibits.
 {¶ 3} Appellant presented evidence that she and Coffey began a romantic relationship in 1984 which lasted until his death in 2001. She testified that she and appellant agreed to be married on July 4, 1986, while on a boating excursion with friends Bill and Cindy Haas. While the Haases did not witness the exchange of vows, they testified that they heard a commotion at the rear of the boat. Upon investigation Coffey and Polly told them that they had just gotten married.
 {¶ 4} Subsequently Coffey and Polly lived together with Christy Foster, Polly's minor daughter from a previous relationship, until Foster left the home to attend college. Foster referred to Coffey as her "step-dad." Foster testified that Polly informed her upon returning from the boating trip that they had gotten married. Thereafter, every five years, Coffey presented Polly with an anniversary ring. There was testimony from several of the couple's friends that the rings were known to be anniversary gifts.
 {¶ 5} Polly offered documentary evidence indicating that she had adopted the last name "Coffey" in some circumstances. She also offered documentary evidence that Coffey himself referred to her using his last name. This evidence included a business card, a cellular phone agreement, and various invoices.
 {¶ 6} Appellants presented evidence that Coffey was financially dependent on his mother, who did not want him to be married. For most of his adult life, Coffey had been involved with operating various family businesses owned by his mother. Coffey did not own any property individually until after his mother's death. As well as controlling his financial affairs, Coffey's mother was involved in his personal life and did not want him to remarry or have another romantic involvement. Coffey himself had expressed on occasion that he did not want to remarry, having gone through a bitter divorce earlier in life.
 {¶ 7} Appellants elicited testimony from friends of the couple indicating that they were unsure of the couple's legal marital status. Appellants also offered documentary evidence, such as tax returns, leases, and employment records, all indicating that Coffey and Polly were each "single."
 {¶ 8} The trial court concluded that Polly had carried her burden in proving the existence of her common-law marriage to Coffey. Specifically, the trial court found:
 {¶ 9} "1. Steven Coffey and Vicki Polly entered an agreement of marriage on July 4, 1986.
 {¶ 10} "2. That they were competent to contract marriage.
 {¶ 11} "3. That they cohabited as husband and wife from July 4, 1986, until Steven Coffey's death on September 11, 2001.
 {¶ 12} "4. That they were treated and reputed as husband and wife in the community and circle of friends and acquaintances in which they moved.
 {¶ 13} "5. That the trail of documents showing a different marital status left by Steven Coffey was motivated by decedent's desire to keep the relationship from his mother and a futile attempt to avoid the problems that could be encountered by a `paper marriage' in the event of another divorce.
 {¶ 14} "6. That both parties to the relationship appeared to be ignorant of the legal extent and consequences of the relationship they established prior to October 10, 1991."
 {¶ 15} From this decision, appellants appeal, raising three assignments of error.
Assignment of Error No. 1
 {¶ 16} "The Trial Court Erred To The Prejudice Of Defendants-appellants In Deciding, Contrary To Ohio Contract Law, That A Common-law Marriage Existed."
 {¶ 17} In their first assignment of error, appellants contend that the trial court erred, as a matter of law, in concluding that the parties entered into a contract to marry. Appellants contend that the trial court's finding that Coffey and Polly were ignorant of the legal consequences of their relationship precludes the finding that the two entered into a contract to marry.
 {¶ 18} A fundamental requirement to establish the existence of a common-law marriage "is a meeting of the minds between the parties who enter into a mutual contract to presently take each other as man andwife." Nestor v. Nestor (1984), 15 Ohio St.3d 143, 146 (emphasis added). Thus the contractual element of a common-law marriage relates to the agreement of the parties to be married and is not dependent on the parties' full understanding of the legal consequences of their agreement. Rather, the marriage contract is complete when the parties agree presently, not in the future, to be married as man and wife, for life.Nestor at 146. Misgivings as to the legal consequences of the relationship is without significance where the parties make a solemn contract to marry in praesenti. See Walker v. Walker (1913), 15 N.P.(N.S.) 189, 28 Ohio Dec. 391, 393.
 {¶ 19} In the present matter, as is likely the case in most statutory marriages, the parties did not contemplate all of the later legal ramifications that their agreement to marry might carry. The evidence indicates, however, that on July 4, 1986, they agreed to be married, and to thenceforth live as husband and wife. Accordingly, we find no merit to appellants' contention that the parties' ignorance with regard to later legal consequences prevents the conclusion that Coffey and Polly entered into a common-law marriage.
 {¶ 20} Appellants next contend that Coffey's attempts to conceal the relationship from his mother also precludes, as a matter of law, the finding that Coffey and Polly entered into a common-law marriage. Appellants argue that Coffey concealed his relationship with Polly from his mother in order to gain financially, and that this concealment indicates that he chose to forego the institution of marriage and its attendant legal consequences.
 {¶ 21} In support of this argument, appellants direct our attention to this court's decision in Deaton v. Bowling (Oct. 19, 1998), Butler App. No. CA97-12-249. In Deaton, this court affirmed a trial court's determination that a common-law marriage did not exist where the parties chose to forego marriage in order to maintain eligibility for workers' compensation benefits. This court found that the "attendant legal consequences" of the denial of the marriage constituted clear and convincing evidence that the parties chose to forego the institution of marriage.
 {¶ 22} However, in the same decision, this court recognized that the existence or nonexistence of a common-law marriage turns on the peculiar facts of each case, and may be recognized "even though the parties, jointly or individually, have denied the existence of the marriage to particular family members." Id. citing Fitzgerald v.Mayfield (1990), 66 Ohio App.3d 298 (existence of marriage denied to son) and Nestor at 146 (existence of marriage denied to mother). An attempt to establish the existence of a common-law marriage will not be defeated by the fact that "some of those with whom the parties have contact are also unaware of the [marital] arrangement." Nestor at 146; Prince v. Lawson
(Aug. 16, 1999), Clermont App. No. CA98-12-116.
 {¶ 23} The testimony reveals that Coffey was financially dependent on his mother. However, there is scant evidence that his mother was ignorant as to his relationship with Polly. There is less evidence supporting the contention that Coffey would suffer certain financial loss if his relationship with Polly were to be discovered by his mother. In this case, evidence is lacking to support the contention that Coffey chose to forego the institution of marriage in light of certain "attendant legal consequences." Accordingly, in the present case, Coffey's efforts to conceal his marriage to Polly from his mother does not bar the conclusion that the parties entered into a common-law marriage. The first assignment of error is overruled.
Assignment of Error No. 2
 {¶ 24} "The Trial Court Erred To The Prejudice Of Defendants-appellants When It Admitted Evidence Of Settlement Negotiations Over Their Objection."
 {¶ 25} At trial, Polly's attorney questioned her regarding a discussion she had with appellants when it was discovered that Coffey had died intestate. Polly testified that appellants told her that they considered her to be Coffey's wife and that they should be able to divide the estate amicably. The testimony continued without objection until Polly was questioned about the disposition of specific assets.
 {¶ 26} At this point, appellants' counsel lodged the following: "Judge, I'm just going to object. I think we're starting to — I thought the issue was marital status, I thought was what [sic] the hearing was about, as opposed to assets or personal —." The trial court overruled the objection, permitting the line of questioning "to show there was a kind of recognition of the marriage."
 {¶ 27} Appellants now argue that the trial court erred in permitting the testimony insofar as it represented settlement negotiations between the parties.
 {¶ 28} Evid.R. 103(A)(1) requires that a party's objection to testimony must specify the grounds for the objection unless the specific ground is apparent from the context. Evid.R. 103(A)(1). In the present matter, appellants' counsel failed to object altogether to Polly's testimony regarding appellants' statements that they considered her to be Coffey's wife, allegedly made during talks to settle the estate. Appellants' counsel did not lodge an objection until the testimony delved into the disposition of specific assets of the estate. Further, appellants' counsel did not object to the testimony on the basis that it represented a settlement negotiation, but rather stated his concerns that the testimony was not relevant to the issue at hand, determining the existence of a common-law marriage. The inadmissibility of settlement negotiations as a basis for the objection was never raised until this appeal.
 {¶ 29} Error may not be predicated upon a ruling admitting evidence unless a timely objection or motion to strike appears in the record, stating the specific ground of the objection. Evid.R. 103(A)(1). Because the objection was not properly raised in the trial court, at a time when the admission of the testimony could have been cured, appellants have waived any claim of error, except plain error. AmerifirstSavings Bank of Xenia v. Krug (1999), 136 Ohio App.3d 468, 481 citingState v. Sibert (1994), 98 Ohio App.3d 412, 423. "Notice of plain error *** is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. Although the plain error doctrine is applied almost exclusively in criminal cases, it will be applied also in civil cases if the error "would have a material adverse affect [sic] on the character and public confidence in judicial proceedings." Schade v. Carnegie Body Co. (1982),70 Ohio St.2d 207, 210; see, also, Yungwirth v. McAvoy (1972),32 Ohio St.2d 285, 288.
 {¶ 30} Having reviewed the entirety of the contested testimony, we do not find plain error in the admission of Polly's testimony. The result of the trial would not clearly have been otherwise had the testimony been excluded. Accordingly, the second assignment of error is overruled.
Assignment of Error No. 3
 {¶ 31} "The Trial Court Erred To The Prejudice Of Defendants-appellants In That The Finding Of The Existence Of A Common-law Marriage Is Against The Manifest Weight Of The Evidence."
 {¶ 32} It is well-established that a reviewing court is guided by a presumption of correctness in the trial court proceedings and judgment. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. Thus, a reviewing court must defer to that presumption when an appellant alleges that the judgment is against the manifest weight of the evidence, if, after a thorough review of the record, there is any "competent, credible evidence" that supports the judgment. C.E. MorrisCo. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 280; Parker v.Parker (1993), 86 Ohio App.3d 727, 737. An appellate court must not substitute its judgment for that of the trial court based upon its own opinion as to the veracity of the witnesses or the reliability of the evidence presented, as the trier of fact is in the best position to make such determinations. Security Pacific Natl. Bank v. Roulette (1986),24 Ohio St.3d 17, 19-21. With these standards in mind, we turn to appellant's contention that the trial court's decision was against the manifest weight of the evidence.
 {¶ 33} Effective October 10, 1991, R.C. 3105.12(B)(1) prohibits the creation of common-law marriages in Ohio. However, under R.C.3105.12(B)(2), common-law marriages established prior to the enactment of the statute remain valid. A common-law marriage is established when the following elements are proven: (1) an agreement of marriage in praesenti; (2) cohabitation as husband and wife; and (3) a holding out by the parties to those with whom they normally come into contact, resulting in a reputation as a married couple in the community. State v. DePew
(1988), 38 Ohio St.3d 275, 279; Nestor, 15 Ohio St.3d at 145.
 {¶ 34} The proponent of a common-law marriage bears the burden of establishing each of its elements by clear and convincing evidence. In reEstate of Shepherd (1994), 97 Ohio App.3d 280, 284. Clear and convincing evidence is that degree of proof which produces in the mind of the trier of fact "a firm belief or conviction as to the allegations sought to be established." Cork v. Bray (1990), 52 Ohio St.3d 35, 38. In deciding whether a party has presented clear and convincing evidence of a common-law marriage, the weight to be given the evidence and the credibility of witnesses is a determination to be made by the trier of fact. Deaton, Butler App. No. CA97-12-249.
 {¶ 35} The contract of marriage in praesenti may be proven either with direct evidence which establishes the agreement, or with proof of cohabitation, acts, declarations, and the conduct of the parties and their recognized status in the community in which they reside. Where there is direct evidence concerning the formation of the contract of marriage in praesenti and a finding by the court, as here, that such a contract exists, "the evidence of long-time cohabitation and reputation of living together as man and wife should be given even greater weight to further strengthen the inference of marriage." Nestor at 146.
 {¶ 36} As to the element of cohabitation, there must be proof that the parties had sexual activity in the open manner of husband and wife in a marital state. Id. As to the element surrounding the reputation of the parties in the community as being man and wife, in order to establish a common-law marriage "it is not necessary that they disseminate information to all society generally, or to all of the community in which they reside. Rather, there must be a holding out to those with whom they normally come in contact." Id. A common-law marriage will not necessarily be defeated by the fact that all persons in the community within which the parties reside are not aware of the marital arrangement, nor by the fact that all persons with whom they normally come in contact are also unaware of the arrangement. Id.
 {¶ 37} In the present case, the trial court was presented with evidence that Coffey and Polly made a present agreement to marry and subsequently cohabited for more than 15 years. The trial court was presented with evidence that Coffey and Polly held themselves out to friends, family, and business associates and clients as married and generally had the reputation of being man and wife in their community. While appellants were able to present evidence to the contrary, the trial court, as the fact finder, was in the best role to weigh this evidence and pass upon its sufficiency. See Deaton, Butler App. No. CA97-12-249 at 5; Myers v. Garson, 66 Ohio St.3d 610, 615-16, 1993-Ohio-9.
 {¶ 38} Because the trial court's decision is supported by competent, credible evidence, we overrule appellant's third assignment of error.
Judgment affirmed.
YOUNG and VALEN, JJ., concur.